GARRAGA v. YELLOW CAB CO., INC.

No. 39429 January 17, 1955 77 So. 2d 276

*Wm. Estopinal,* Gulfport, for appellant.

*Wallace & Greaves,* Gulfport, for appellee.

McGehee, C. J.

This is an appeal from a verdict and judgment in favor of the defendant in a personal injury suit for damages. The grounds of error assigned for a reversal of the case are (1) That the trial court permitted unlimited latitude to the attorney for the defendant in the cross-examination of the plaintiff with reference to his previous convictions for the sale or manufacture of intoxicating liquor on which the revenue to the federal government had not been paid; (2) that the trial court erred in permitting the attorney for the defendant to argue that the plaintiff had purposely thrown himself out of the taxicab so as to get hurt in order that he would be able to avoid appearing in the federal court to answer charges of selling whiskey on which the federal revenue tax had not been paid, and that the plaintiff being a bootlegger had no right to recover damages against the defendant; (3) that the trial court erred in instructing the jury that the plaintiff's failure to introduce a Dr. Melvin (who had treated the plaintiff in the hospital at the instance and expense of the defendant) as a witness on his behalf would create a presumption that if he had been introduced as a witness his testimony would have been unfavorable to the plaintiff; and (4) that the trial court erred in overruling the plaintiff's motion for a new trial on the ground that the verdict of the jury was against the overwhelming weight of the evidence, and disclosed bias prejudice and ill will on the part of the jury against the plaintiff.

 Section 1693, Code of 1942, provides among other things that: "Any witness may be examined touching * * * his conviction of any crime, and his answers may be contradicted, and his interest on his conviction of a crime established by other evidence; and a witness shall not be excused from answering any question, material and relevant; unless the answer would expose him to criminal prosecution or penalty."

On cross-examination of the plaintiff the attorney for the defendant asked, "Q. Have you ever been convicted of a crime which is violative of the laws of the State of Mississippi? A. Well, I have been convicted for bitheism. Q. Approximately what number of times? A. Well, that I couldn't tell you because I didn't put it down — Q. It was a great many tho? A. Yes, sir, a good many." In Webster's New International Dictionary, Second Edition, Unabridged, the word, "bitheism" is defined as follows: "Belief in the existence of two gods, as one good and one evil."

The attorney for the appellee in his brief takes the position that the plaintiff was trying to be facetious with him, and the record of the testimony shows that he proceeded to further question the plaintiff as follows: "Q. And you have been convicted of the violations of the Internal Revenue Laws of the United States of America some twenty-eight times in the Federal Court — the District Court of the United States in Biloxi, Mississippi, since the year 1931, haven't you? A. Well, just like I told you a minute ago, I don't know how many times I have been convicted. Q. All right, at the time of the accident you complain of, were you not then under indictments and on bond on bail for —." The trial court sustained the objection to this question as to whether he was under indictment, and limited the issue to convictions. No motion was made here for a mistrial. The plaintiff was then asked specifically about certain convictions, which he admitted. There was no error in the foregoing procedure, since the inquiry was expressly permitted by the statute hereinbefore mentioned, and no motion was made for a mistrial as to mere indictments.

However, before concluding his cross-examination of the plaintiff the attorney for the defendant was asking the plaintiff about what jobs of work he had been engaged in beginning with "the first day of January, 1951, and come to the last day of December 1951. What job did you have? A. What job did you explain to this jury

746

just a few minutes (ago) that I was in? Q. Well, I thought you were a bootlegger; I didn't know, but I thought that you were. Is that right? A. Well, you say that it is. Q. Well, I am asking you. A. Didn't I say that I have been convicted of that— Q. Well, you don't have to incriminate yourself. Really, selling whiskey isn't a job, I'm just asking you about any job or work you had — and legitimate work. Did you have one? A. I told you I had a job hauling masonite wood." Of course it was error for the attorney for the defendant to state to the plaintiff, "Well, I thought you were a bootlegger; I didn't know, but I thought that you were." However, no objection was made to the foregoing questions, so as to permit the court to sustain the same and pave the way for a motion for a mistrial, and hence the asking of them cannot be taken advantage of as error on this appeal.

 On the second assignment of error mentioned in paragraph one of this opinion in regard to the attorney for the defendant having told the jury in his argument that the plaintiff had purposely thrown himself out of the taxicab so as to get hurt in order that he would be able to avoid appearing at the next term of the federal court to be held in Biloxi to answer charges of selling whiskey on which the federal revenue tax had not been paid, and should not therefore be permitted to recover damages from the plaintiff on account thereof, we find that a bill of exceptions was offered by the plaintiff, embodying this complaint, and that the purported bill of exceptions signed in the name of the plaintiff by his attorney, was followed by a notation signed by the trial judge which reads: "The argument of the attorneys to the jury having been recorded in this case by the court reporter, the said argument shall be a part of this bill of exception." However, the arguments of the attorneys to the jury are not contained in the record before us so as to enable this Court to determine exactly what was said, and the context thereof. However, the notation following

the bill of exceptions, and signed by the judge, does not serve the purpose of constituting a complete bill of exceptions, in regard to the attorney for the defendant having told the jury that the complainant, a bootlegger, should not be permitted to take away from the defendant his money, since "the plaintiff had thrown himself head first out of the taxicab, so as to avoid attending the Federal Court where several indictments were pending against him for not having paid the revenue to the United States Government on whiskey that he had in his possession at that time," for the reason that such notation, following the purported bill of exceptions, contemplated by its very terms that since the argument of the attorney had been taken down by the court reporter, the same should be copied into the record as a part of the bill of exceptions. This was not done; and we cannot, therefore, consider the purported bill of exceptions as being sufficient, since it was incumbent upon the appellant to see to it that the argument was transcribed and made a part thereof.

It is true that the plaintiff had admitted, in effect, that he was a bootlegger, but there is no proof in the record that he "had thrown himself head first out of the taxicab on the day he was hurt, so as to avoid meeting the Federal Court where several indictments were pending against him for not having paid the revenue to the United States Government on whiskey that he had in his possession at that time." Assuming that the attorney thought it to be a reasonable inference from the facts to be hereinafter stated that the plaintiff, a man weighing at least 200 pounds, had purposely unlatched the taxicab door and fallen out on the ground on his neck and shoulders, so as to injure his neck and back, there was no proof that he had done so for the purpose of avoiding going to the Federal Court to answer several indictments then pending against him for not having paid the revenue to the United States Government on whiskey that he had in his possession at that time, or had

done so at all. The court evidently meant by requiring that the argument of the attorneys should be embodied as a part of the bill of exceptions that the arguments as recorded would speak for themselves.

The pendency of such indictments would not have been competent proof even if such proof had been made. It is only competent to prove prior convictions of crime as going to the credibility of a witness.

Of course, a proof of previous convictions of crime is always prejudicial to a plaintiff, even though such proof is admissible on the issue of the credibility of him as a witness. It is impossible to impeach the credibility of the plaintiff as a witness without such proof being prejudicial to his interest in the case. But the statute authorizes such proof to be made.

On the third assignment of error mentioned in paragraph one of this opinion, it appears that the plaintiff did not employ Dr. Melvin, but that this doctor treated him while he was in the hospital, and had done so at the instance of the defendant. Nevertheless, the relation of physician and patient had existed, and the doctor was shown to have had an office in the City of Gulfport during the trial and that he was not subpoenaed as a witness by the plaintiff; and of course, he was not available to the defendant as a witness without the plaintiff's consent. He was not offered as a witness and was not therefore prevented from testifying by any objection of the plaintiff. However, his testimony would have only related to the extent of the damages, and none were allowed.

We next come to the fourth and final assignment of error made by the plaintiff on this appeal and the claim that the trial court was in error in overruling the plaintiff's motion for a new trial on the ground that the verdict was not supported by the evidence, and that the jury was motivated by bias, prejudice, and ill will against the plaintiff by reason of having been cross-examined with reference to his previous convictions of crime.

The proof on behalf of the plaintiff disclosed that he summoned a taxicab owned and operated by the defendant to transport him from his residence to his filling station about 7:30 to 8:00 p. m. on February 15, 1953; that his filling station was located on the west side of a link of U. S. Highway 49 in the City of Gulfport; that upon arrival at the filling station it was necessary for the driver of the taxicab to come to a stop on the east side of the highway until the oncoming traffic, particularly from the south, had cleared the highway except for one car, and that he had time to cross the highway ahead of this car; that after driving for a distance of about 20 feet across the paved portion of the highway, one of the front wheels of the taxicab dropped into a drain or hole, shown by the plaintiff's witness to be approximately 9 inches deep, and by the defendant's witness to be approximately 4 inches deep; but according to a photograph introduced in evidence it was as deep as the thickness of the paved hard-surfaced highway slab; that when the wheel dropped into the washed-out drain or hole on the highway right of way as the taxicab was going to enter the driveway between the building and the gasoline pumps, according to the version of the plaintiff, who says he was thrown from the front seat against the right front door which caused the same to come open and he went out of the taxicab head forward and in such a manner as to injure his neck and his back when he fell; that according to the testimony of the plaintiff and his small son, the jolting of the taxicab and the weight of the plaintiff's body caused the door to open and the plaintiff to fall out of the taxicab, or that the jolt caused him to be thrown through the door as it opened; that plaintiff remained in the hospital about two weeks, and was then carried home in an ambulance; that his injury was such as rendered him incapable of performing any kind of work up to the date of the trial; and that according to the testimony of the plaintiff's own physician, he has a serious and permanent injury. The proof shows that

he would have been entitled to recover substantial damages, assuming that his injury was due to the fault of the defendant on the occasion complained of.

According to the testimony on behalf of the defendant, the taxicab driver reached over from where he was sitting behind the steering wheel to ascertain that the door was locked, and that he found the door was fastened, after the plaintiff's small son had gotten on the front seat by the driver and his father had gotten in the taxicab next to the front side door thereof; and that it was impossible for the door to become unlatched and to open without the lever being lifted up by the hand of the passenger sitting next to the door. It is therefore the theory and contention of the defendant that the plaintiff had raised the lever, unlatched the door and had fallen on the ground as the door opened. In fact, the defendant contends that the testimony on its behalf shows that the plaintiff did put his hand on the latch, then unlatched the door before it came open, and that he then fell out. With deference, we do not so interpret the testimony on that issue as given by the driver of the taxicab, the only witness for the defendant who testified as to how the accident occurred. The taxicab driver was asked: "What did you do when you got immediately in front of his filling station? A. Well, when I got right close to the filling station, I looked to my left and there was a bunch of cars traveling from the rear, so I just pulled over to my right and let the cars go by. When the road got clear, I just cut the car over— * * * Q. Well, what directions did he give you, if any, where to drive to? A. Well, he told me to pull around—, he said, 'Pull up and go around between the tanks and the store.' " The witness further testified: "I just turned to my left across the highway and went to pull — started to pull right in between the tanks, and just as — when my front wheels went off the highway, I heard a door click, and suddenly I stepped on the brakes and Mr. Garraga was falling out * * * Q. Did you see his

right hand then? A. Yes, sir. Q. Where was Garraga's right hand? A. It was on the door. It was on the door, and door was going open, and his hand on the door like that. (Indicating) * * * Q. And his right hand was on the door as he fell? A. Yes, sir. His hand was on the door as it was going open like that. (Indicating) * * * Did you see that that door was latched when your passengers got in at Garraga's home. A. I reached over and checked the door. * * * Q. Would that door come open without that latch — lever being lifted? A. No, sir, not unless it hit something mighty hard in front and we didn't touch a thing. Q. You would have to break the frame? A. You would have to break the frame or hit a mighty hard lick to make that door — * * * Q. When you heard the latch click, what had clicked the latch? A. I don't know unless — he could have opened it — Q. You don't know — you didn't see him touch that latch and open the door, did you? A. I saw his hand when he was going out the door — just like that. (Indicating). Q. He was going out then. A. Yes, sir. Q. Wasn't he trying to save himself from going out by trying to catch something. A. He must have been. His hand was on the door and he was going out. Q. But you wouldn't tell this jury that he opened that door and unlatched it. A. I didn't say — I didn't say he opened the latch, no sir. Q. You saw him when he was going out and he had his hand on the latch — A. On the latch — Q. —trying to stop himself from falling? A. When the latch clicked, I put on my brakes and reached for him and he had his hand on the door and was falling out. Q. Well, when you put on your brakes, had you already hit that low place in the highway — jolted you? A. We hit — when that went off the pavement it kinda made a little racket like that (indicating) and the door clicked and— Q. In other words, when the jolt came the door clicked? A. Yes, sir. * * * A. Well, what had caused the door to open? A. Well, the only thing that could have caused the door to open was

when I hit that little rough place there. Q. When you hit the rough place? That jolted it and opened it didn't it? A. Well, it sounded then.'' This witness did not think that the jolt was strong enough, when the wheel dropped into the drain or hole to have thrown the plaintiff off the front seat on down through the door to the ground, but he never did testify in so many words that the plaintiff had his hand on the latch at any time; he merely said that he had his hand on the door.

An automobile mechanic, when testifying as a witness for the defendant, said that he found the doors on the car to be in good shape, having particular reference to the latches, but admitted that an impact would cause a door to flare open from the bending of a frame; that a bad twist of the car would cause the door to open.

In the case of Williams v. Lumpkin, 169 Miss. 146, 152 So. 842, the court said among other things that: ''We therefore take judicial notice of the fact that the sedan type of the modern automobile has a latch on each door which will prevent the door coming open, and that such a door will come open only when unlatched. * * * Moreover, these automobile bodies of the sedan type and the doors and latches are so designed and constructed that speed and swerves do not unlatch the doors, as is demonstrated day after day everywhere, provided the equipment is in good repair; and there is no suggestion that any part of the automobile here was in any respect out of order or not in good repair. * * * If the door had not come open, the child would not have been injured. The door would not have come open unless it was unlatched. The defendant did not unlatch it or have any reason to anticipate that it was or would be unlatched. * * *.''

The case above referred to would be controlling in the instant case except for the fact that it is undisputed that a front wheel of this taxicab dropped into a drain or hole, and that the plaintiff thereupon either unlatched the lock of the door or that his weight when he was

thrown against the door by the jolt, together with the door being sprung open by the impact, caused him to fall out on the ground, and we think that it was a question for the jury as to whether or not the defendant was negligent in driving into this drain or hole while his lights were burning, so as to cause the impact of the jolt and the weight of the body of the plaintiff when thrown against the door to cause it to spring open, or whether he foolishly unlatched the door so as to be thrown out of the taxicab and to the ground in the manner shown by the testimony. The precise question is as to whether or not the verdict in favor of the defendant is against the overwhelming weight of the evidence, and whether or not the case should be remanded for a new trial on that ground.

 We have concluded that the verdict of the jury is against the great weight of the evidence and that the case should be reversed and remanded for a new trial. As to the instruction in regard to the failure of the plaintiff to call Dr. Melvin as a witness, it was only shown that he had an office in Gulfport but the record does not affirmatively show that he was available as a witness at the time of the trial, but this is a matter that would be developed on a new trial and the basis for the giving of such an instruction may be supplied at that time.

Reversed and remanded.

All justices concur except Gillespie, who dissents.