317 So.2d 902 (1975)
Dora ANDERSON
v.
Mrs. Burt JAEGER and Sam Laine.
No. 48244.
Supreme Court of Mississippi.
September 9, 1975.
*903 Watkins & Eager, James A. Becker, Jr., Velia Ann Mayer, Jackson, Hatcher & Westerfield, Cleveland, for appellant.
Jacobs, Griffith & McIntosh, Cleveland, Wise Carter Child Steen & Caraway, Jackson, for appellees.
Before RODGERS, SMITH and WALKER, JJ.
SMITH, Justice.
Dora Anderson was plaintiff and Mrs. Burt Jaeger and Sam Laine were defendants in an action for damages for physical injuries sustained by plaintiff in a motor vehicle collision. The issues were submitted to a jury which returned a verdict for Defendant Jaeger but awarded Plaintiff Anderson $35,000 against Defendant Laine.
Anderson has appealed from the judgment for Defendant Jaeger. She also has appealed from the judgment awarded her against Defendant Laine. The latter appeal is based upon a contention that the $35,000 award is grossly inadequate and that her motion for a new trial upon the issue of damages alone should have been sustained. Laine has cross-appealed, assigning as error the trial court's refusal to grant a peremptory instruction requested by him.
In addition to her contention that the trial court should have sustained her motion for a new trial upon the ground that the verdict was grossly inadequate, Anderson assigns as error the overruling of objections to testimony of a Dr. Scarborough, an expert witness offered by Defendant Jaeger, and "in allowing" counsel for Jaeger to "get matters before the jury by suggestive questions," to the witness contrary to a prior ruling of the court.
The three-vehicle collision, in which Appellant Anderson was injured occurred at a street crossing controlled by a traffic light. At the time Anderson was a "nurse's aide" and was riding in an ambulance dispatched to pick up an "O.B." patient. Laine was the driver of the ambulance. Without burdening this opinion with needless detail, the evidence is ample to justify a jury finding that the ambulance was unnecessarily traveling at an excessive and dangerous rate of speed under the circumstances, with siren going and light flashing, and entered the intersection from the West, against the red light signal as Jaeger, driving her closed passenger automobile, entered from the North on the green signal. There was a collision between the two vehicles which also involved a third vehicle driven by a Mrs. Coury, who is not a party to this litigation.
The verdict of the jury on the issue of Laine's liability is challenged on cross-appeal by Laine but we find that there was sufficient evidence to support the jury's finding that the collision was the *904 proximate result of his negligence in the operation of the ambulance.
Appellant Anderson does not assign as error a failure to instruct the jury to find for her peremptorily against Defendant Jaeger on the issue of liability. Her contention as against Jaeger, is directed in the main to the proposition that the trial court erred in overruling objections to testimony given by Dr. Scarborough, offered by Jaeger as an expert physicist to testify as to the scientific characteristics of sound and as to certain experiments he had conducted at the scene, and to alleged "suggestive" questions addressed to him. Shortly after Dr. Scarborough began his testimony, the trial court excused the jury and there was an extended hearing outside the presence of the jury, (covering 30 pages of the record), at the conclusion of which the trial court declined to allow the witness to testify as to the result of his experiments. In so ruling, the trial court was correct if for no other reason than that there was a failure to establish any reasonably substantial similarity between conditions prevailing at the time of the experiments with those which had existed when the collision occurred. Out of the presence of the jury the trial court ruled that Dr. Scarborough could testify generally, however, about the relative situations of the several persons who heard or failed to hear the siren of the approaching ambulance. Counsel for Anderson and for Laine, following this ruling by the Court, stated, "We can stipulate as to that."
When Dr. Scarborough was first placed on the stand, before the jury was excluded, he had stated his qualifications as a physicist and had testified, without objection in the presence of the jury, that he had been employed by Jaeger "to do a study" by going to:
[T]he intersection of Sunflower and Fourth in Clarksdale, Mississippi, and to measure the relative sound levels at certain points around that intersection due to a high, shrill noise such as a siren coming across the bridge.
Q. All right, did you make such a study?
A. Yes. I did.
Notwithstanding this testimony, given without objection before the jury, the contention is now made that the questions subsequently addressed to the Witness Scarborough in the presence of the jury after its return were prejudicially suggestive and allowed the jury to know that such a study had been made. The trial court ruled that the witness might give general testimony as to which of the three persons, Mrs. Jaeger, Mrs. Coury, and a man who had been sitting in front of a filling station, was in the best relative position to hear outside sounds. It was following this ruling that counsel for Anderson and for Laine each stated: "We can stipulate that."
The examination then proceeded without objection:
Q. May 29. Were you employed by me to make an investigation for me?
A. Yes.
Q. What was the scope of the investigation that I asked you to make, Mr. Scarborough?
A. I was to determine the noise levels at various points around the intersection in question, which would be due to a loud shrill sound such as a siren, coming across the Fourth Street bridge toward the intersection.
The witness then gave the results of certain measurements of distances between locations at and approaching the intersection, again without objection. After testimony about the characteristics of sound waves, the first objection was interposed by counsel for Defendant Laine to this question:
Q. Now, if you will discuss the ability of a person located at that point to hear a siren coming across the bridge?

*905 MR. CARRAWAY:  If the Court please, we object; I thought we were just  that the only thing that would go in would be a broad, general comparison of the three respective positions, and not anything  and it appears we are getting into specifics which as I understand the ruling on yesterday was going to be limited.
Counsel for Anderson made no objection and there was no specific ruling on the objection interposed by Mr. Carraway. The court restated his ruling upon the limits of the examination, and Mr. Carraway said:
It is our understanding, Judge, that doesn't include any tests that he made or any details of any tests, he did.
COURT: Nor any measurements or anything of that nature.
MR. JACOBS: All right, we understand that the sound measurements are excluded by the Court.
Although no ruling was called for, the court indicated that the question was not properly framed and it was abandoned and not answered. The examination of the witness continued without objection until the witness was asked to "discuss the characteristics of sound as applied to that position," "that position" having included buildings and other physical characteristics at the intersection. At this point counsel for Defendant Laine interposed, "... we have no objection to him comparing the three positions, or places, where the three people were, Mrs. Coury, Willie Sommeville, and Mrs. Jaeger, in respect to each other, we think that's the extent to which the witness can testify." The court agreed and the examination continued. Without objection, the witness testified:
Q.  What obstructions, if any, were there to the hearing of Mrs. Jaeger when she was in that position, Doctor Scarborough?
A. Well, in that position, first, the liquor store and these other buildings there between her position and the bridge will reflect back the sound which hits them. The sound which reaches that position will be simply that which bends around the corner of the building which bends over the top and which gets reflected from across the street. This is significantly less sound than reaches a person in front of the liquor store.
Q. In other words, in front of the bench 
A.  yes, sir 
Q.  at the bench 
A.  I'm sorry, I said, "Liquor store", I meant service station.
Q. All right, Now, what about the position where Mrs. Coury's vehicle came to a stop, which is right there at the southeast intersection, or or southeast portion of that intersection of Fourth Street and Sunflower Avenue. (Pause) What kind of a position would a person there be in to hear sound as compared with Mrs. Jaeger.
A. At the corner of the cemetery, that is the southeast corner of the intersection 
Q.  yes, sir 
A.  the sound at that level would be significantly louder than the sound at the position of Mrs. Jaeger. It's almost the same but in some cases slightly less than the sound which would be heard from the position in front of the service station.
Q. Now, Doctor Scarborough, does the fact that a person in a vehicle with the windows up, would that have any effect on their ability to hear sound such as a siren?
A. Yes, the windows up drastically reduces the amount of sound which gets into an automobile.
Dr. Scarborough was asked by what unit the intensity of sound was measured and *906 he responded: "It's called the decibel." He was then asked if there was an instrument that measures sound intensity and counsel for Anderson objected. The court sustained the objection. By the next question Dr. Scarborough was asked to state: "How much less would the sound be to a person in a closed automobile with the windows up than it would be to a person standing in the open?" An objection to this question was sustained. The next question was whether the fact that a person was in an automobile with the motor running and the automobile moving would have "any effect" on the ability of a person to hear a sound such as a siren? An objection by counsel for Anderson upon the ground that the question called for speculation was interposed. The court, without ruling on the objection, stated that he would allow the witness to say whether the hearing ability of a person in an automobile with the windows up and motor running would be affected by those two factors. No further objection was made and the witness said that it would.
Dr. Scarborough was asked if he had run "some tests with a sound level instrument" at the three locations, referred to in evidence, "using a siren crossing the bridge, - - -" The question was interrupted by an objection of counsel and the objection was sustained. The final question was hypothetical, was objected to and the objection was sustained.
There was no cross-examination of the witness.
The emphasis is now, however, directed almost entirely to the questions asked rather than to any answers Dr. Scarborough was allowed to give, the contention now being that the questions were prejudicially suggestive and that the trial court should have done something about it. Exactly what he should have done is not clear, as he was not requested to do anything. At no point in the examination of Dr. Scarborough was there any request, either on behalf of Anderson or Laine, that the jury be instructed that questions were not evidence or that they should not speculate as to matters not in evidence. No indication can be gathered from repeated readings of the record of Dr. Scarborough's examination that the questions addressed to him were considered by plaintiff's counsel unduly suggestive at the time of the trial. There was no motion for a mistrial upon the ground that prejudice had resulted from improper questioning of the witness or from impermissible conduct of counsel with respect to such questions. A motion for a new trial filed by Laine wholly fails even to mention the subject, nor does he assign it as error on his appeal although he adopts the proposition in his brief. Anderson's motion for a new trial, as it relates to this matter, says only this:
(5) The Court erred in overruling Plaintiff's objection to the testimony of J.A. Scarborough, the Physics Professor offered on behalf of the Defendant, Mrs. Burt Jaeger.
Nothing was said in the motion as to alleged prejudicial nature of the questions. This proposition first makes its appearance in the assignments of error filed on behalf of Anderson:
The trail (sic) court erred in allowing the attorney for defendant-appellee Jaeger to persist in his endeavor to get matters before the jury by suggestive questions in view of the prior rulings of the trial court.
When, in the course of a trial before a jury, it is conceived that something has occurred of a prejudicial nature, an objection must be interposed at the time and the trial court thus be given an opportunity to rule. If the sustaining of the objection should then be considered incapable of removing from the minds of the jury the supposed prejudicial effect of the matter objected to, the court then must be requested to instruct the jury that it be disregarded. If, the trial court having responded by so instructing the jury, the *907 objector should still consider that the interests of his client have been irremediably prejudiced and that the actions of the trial court, although favorable, have not been effective in removing from the minds of the jury the prejudicial effect of the objectionable matter, then a motion must be made at the time for a mistrial. It is not permissible to wait until after a verdict has been returned to raise questions such as this after it has turned out that the verdict is unfavorable. It is too late to raise the point for the first time in a motion for a new trial. The trial court may not be put in error where timely request for a ruling has not been made. Timely objections, followed by appropriate and timely motions, are necessary to preserve such points on appeal.
Finally, Appellant Anderson contends that the $35,000 awarded her by the jury is so grossly inadequate that the case should be reversed and a new trial granted on the issue of damages alone.
A jury award of unliquidated damages will not be disturbed by this Court on appeal unless it has been made to appear that the amount is either so grossly excessive or so grossly inadequate as to "shock the enlightened conscience" or evince bias, passion or prejudice on the part of the jury. Dickey v. Parham, 295 So.2d 284 (Miss. 1974); Koock v. Fletcher Construction Co., 235 So.2d 462 (Miss. 1970); Burlingame v. Southwest Drug Stores of Miss., Inc., 203 So.2d 74 (Miss. 1967); Brown & Root, Inc. v. Continental Southern Lines, Inc., 228 Miss. 15, 87 So.2d 257 (1956); Peerless Supply Co. v. Jeter, 218 Miss. 61, 65 So.2d 240 (1953).
Considerable medical testimony by several doctors appears in the record. It is enough to say here that this testimony, as to the nature and extent of Anderson's injuries, is neither so consistent nor uncontradictory as to require this Court to substitute its judgment as to the amount of damages for the findings of the jury. It seems anomalous to say that a jury, which awards a plaintiff $35,000 was motivated in so doing by bias, passion or prejudice against her. Such a case may be conceivable, but this is not such a case. If the award is inadequate, and we are unable to say from the record that it is, it has not been made to appear that it reaches that level of inadequacy which shocks the enlightened conscience or makes it appear that it was the result of bias, passion or prejudice on the part of the jury against the plaintiff.
The examination of the whole record convinces us that the case was well and fairly tried and that the matters assigned as error on both direct and cross-appeals are without merit.
Affirmed on direct and cross-appeals.
GILLESPIE, C.J., and PATTERSON, INZER, ROBERTSON, SUGG and BROOM, JJ., concur.