478 So.2d 282 (1985)
Lonnie B. EDWARDS
v.
William C. ELLIS.
No. 55119.
Supreme Court of Mississippi.
October 2, 1985.
*283 William A. Brown, Walker, Brown & Brown, William L. Rone, Hernando, for appellant.
Richard T. Phillips, Smith & Phillips, Batesville, for appellee.
Before WALKER, HAWKINS and DAN M. LEE, JJ.
DAN M. LEE, Justice, for the Court:
This appeal is made from a jury verdict and judgment rendered in the Circuit Court of Tate County, where the appellee, Bill Ellis, was awarded $80,000 for personal injuries sustained in an automobile accident. We affirm.
On June 14, 1980, Bill Ellis, a Mississippi Highway Patrolman, was traveling on U.S. Highway 51 near the town of Como in Panola County, Mississippi. At approximately 1:00 o'clock p.m., Ellis clocked an *284 approaching northbound vehicle on radar at 75 miles per hour in a 55 miles per hour zone. When Ellis turned in pursuit of the vehicle, the driver fled onto a county gravel road. Eventually the chase led onto a north-south section of gravel road where the collision which gave rise to this case occurred.
As the vehicle driven by Ellis and the vehicle he was following were proceeding in a southerly direction, the appellant, Lonnie Edwards, was driving a 1979 Ford pickup truck in a northerly direction on the same road. The fleeing vehicle, stirring up a cloud of dust and gravel, passed Edwards's pickup. The pickup and Ellis's patrol car then collided headon on the gravel road.
Both Edwards and Ellis were injured in the accident. Edwards suffered a broken neck and was unconscious for several weeks. Ellis sustained a laceration and fracture just below the left knee, two fractured ribs and other contusions and abrasions.
Edwards subsequently filed a declaration against Ellis and the Mississippi Highway Patrol for damages sustained in the collision. The Highway Patrol was dismissed as a defendant and the cause was transferred to the Circuit Court of Tate County. Edwards's claim was eventually settled and dismissed with prejudice.
Bill Ellis filed a counterclaim against Edwards, charging him with negligence in (a) operating the pickup truck while under the influence of alcohol; (b) failing to drive on the right side of the road; (c) failing to pass on the right half of the road; (d) turning his truck from a direct course when that movement could not be done with reasonable safety; (e) failure to maintain proper control; (f) failing to keep a proper lookout; (g) allowing his vehicle to crash headon on the wrong side of the road; and (h) other ways. Ellis demanded judgment against Edwards in the amount of $500,000 actual and punitive damages, together with costs.
Edwards answered the counterclaim denying any negligence on his part and charged negligence on the part of Ellis in operating his patrol vehicle at a high rate of speed on a narrow, dusty, gravel road, without just cause. Edwards further asserted that Ellis's negligence was the sole proximate cause of the collision and damages to both parties, and affirmatively pled assumption of risk and contributory negligence on the part of Bill Ellis.
The appellant, Lonnie Edwards, makes six assignments of error. They are:
I. The court erred in admitting blood alcohol test results: (a) in violation of § 63-11-7 of the Mississippi Code; and, (b) in violation of the appellant's medical privilege, which was not waived.
II. The court erred in allowing the appellee to appear throughout the trial in the uniform of the Mississippi Highway Patrol.
III. The court erred in allowing expert testimony on the effects of alcohol.
IV. The court erred in allowing testimony to "reconstruct" the accident.
V. The court erred in refusing Instruction D-3 on assumption of risk.
VI. The jury's verdict was grossly excessive.
I. Did the court err in admitting the results of blood alcohol tests performed on Lonnie Edwards?
This assignment of error is made in two distinct parts which must be considered separately. The first question is whether the admitted evidence resulted from tests performed pursuant to § 63-11-7 Miss. Code Ann. (1972). The alternative question is whether the test results were admitted in violation of Edwards's medical privilege, which is alleged to have not been waived.
Miss. Code Ann. § 63-11-7 (1972) states:
If any person be unconscious or dead as a result of an accident, or unconscious at the time of arrest or apprehension or when the test is to be administered, or is otherwise in a condition rendering him incapable of refusal, such person shall be subjected to a blood test for the purpose of determining the alcoholic content of his blood ... if the arresting officer *285 has reasonable grounds to believe the person to have been driving ... while under the influence of intoxicating liquor. The results of such tests or test however, shall not be used in evidence against such person in any court or before any regulatory body without the consent of the person so tested.... [B]lood samples taken under this section shall be used exclusively for statistical evaluation of accident causes with safeguards established to protect the identity of such victims and to extend the rights of privileged communications to those engaged in taking, handling and evaluating such statistical evidence. (emphasis added).
As a result of the collision which is the basis of this suit, Lonnie Edwards was rendered unconscious. Although he apparently had a few conscious moments shortly after the accident, he remained essentially unconscious until the end of July. It is Edwards's contention on appeal that the admitted results were from tests presumably made at the request of the Highway Patrol and therefore were inadmissible under § 63-11-7.
The record clearly shows that two distinct blood alcohol tests were administered to Lonnie Edwards after the accident. The first was performed pursuant to § 63-11-7; its results indicated a .24% alcohol content in Lonnie Edwards's blood. The results of that blood test were properly ruled to be inadmissible. Stong v. Freeman Truck Line, 456 So.2d 698, 712-713 (Miss. 1984). The results which were admitted were those of later tests administered in Memphis, Tennessee, as part of Edwards's medical treatment. In Cutchens v. State, 310 So.2d 273 (Miss. 1975); cert. denied, 423 U.S. 1061, 96 S.Ct. 799, 46 L.Ed.2d 652 (1976) this Court held that the result of a hospital blood test, administered under circumstances substantially analogous to those in the instant case, was competent evidence bearing upon the question of a criminal defendant's state of intoxication. If such results were admissible against a criminal defendant, to whom the law affords greater protection, they would certainly be admissible against a civil litigant. This is especially true where, as in the present case, additional competent evidence was available which indicated the defendant's state of intoxication. Here, both Edwards and his wife testified that he had been drinking gin shortly before the accident. Ellis testified that while pulling Edwards from the wrecked pickup truck, he could smell liquor on Edwards. Edwards had a bottle of gin in his back pocket at the time of the accident. The test result from the Memphis hospital, taken as part of Edwards's diagnosis and treatment, was separate and distinct from the blood test administered pursuant to Miss. Code Ann. § 63-11-7 (1972), and, therefore, was as competent and admissible as was other evidence of Edwards's intoxication.
The second part of Edwards's first assignment of error centers about his medical privilege. Anticipating that the result of the second blood test would not be held inadmissible under § 63-11-7, Edwards contends that it was nonetheless inadmissible as a privileged communication between patient and physician:
All communications made to a physician, ... hospital, [or] nurse ... by a patient under his charge ... are hereby declared to be privileged, and such party shall not be required to disclose the same in any legal proceeding except at the instance of the patient... .
Miss. Code Ann. § 13-1-21 (Supp. 1984).
In refutation of Edwards's assertion of privilege, Ellis produced a medical authorization form, signed by Edwards and witnessed by his wife, which stated, in part, that it "constitutes [Edwards's] waiver of the physician/patient privilege and authorizes [attorneys for Ellis] to receive medical information about [Edwards's] injuries and treatment as a result of [the June 14, 1980] collision." The question presented is whether this waiver is contractual (and, therefore, irrevocable) or gratuitous. As we find the waiver to have been contractual, we are not called upon to determine *286 whether a gratuitous waiver of such a privilege is subject to revocation.
As Judge Grant has correctly noted in his Summary of Mississippi Law, § 766:
There is a sufficient consideration for a promise if there is any benefit to the promisor or any loss, detriment, or inconvenience to the promisee. The consideration, to be sufficient in law, need not be adequate. The consideration is sufficient if the person to whom the promise is made refrains from doing anything which he has a right to do, whether there is any actual loss to him or actual benefit to the party making the promise or not. Any benefit resulting to the party promising, by the act of the promisee, is a sufficient consideration. It is not essential that there should be any adequacy in point of actual value, but a slight benefit, in the absence of fraud, deceit, or the like, will be sufficient. Sadler v. Lee (1957) 232 Miss. 349, 98 So.2d 863. Also see American Olean Tile Co. v. Morton (1963) 247 Miss. 886, 157 So.2d 788.
In this case, Edwards did receive benefits as a result of his promise to waive the physician/patient privilege. By waiving the privilege Edwards was able to enjoy continued negotiation of his claim against Ellis. He received Ellis's cooperation during the settlement negotiations; ultimately, he received $20,000 in settlement of his claim.
Appellee William Ellis, on the other hand, relinquished rights at least in partial reliance on Edwards's promised waiver. Obviously, by settling Edwards's claim, Ellis gave up the right to take the case to trial and defend. He gave up the right to confront and cross-examine any witnesses whom Edwards might have called. He also gave up $20,000.
It would be impossible to dissect all the transactions which take place during settlement negotiation, subject them to comprehensive analysis, and determine each precise "quid" and its corresponding "quo" in the quid pro quo. It would also be unnecessary. In the give and take of such negotiations, any concession by one party is legally sufficient as consideration for all concessions made by the other party. The respective values of those concessions are immaterial. It is fundamental law that, no matter how meager the actual value of the consideration, it may nonetheless be legally sufficient. See American Olean Tile Co. v. Morton, 247 Miss. 886, 157 So.2d 788 (1963); Meder v. Superior Oil Co., 151 Miss. 814, 119 So. 318 (1928); see also York v. Georgia-Pacific, 585 F. Supp. 1265 (N.D. Miss. 1984). A contract found to be merely improvident will supply no basis for relief.
It is therefore apparent that Lonnie Edwards contractually relinquished his physician/patient privilege by a signed and witnessed waiver. Any information which William Ellis came to possess through reliance on that waiver, including evidence of Edwards's blood alcohol level, was properly admitted at trial.
II. Did the court err by allowing the appellee, Bill Ellis, to appear at trial in uniform?
During trial the appellee, Bill Ellis, wore his Mississippi Highway Patrol uniform despite the fact that he was not acting in any official capacity. In response to the objection of the attorney for Lonnie Edwards, the court said: "I don't know of any authority that would permit me to exclude him or require any party ... to wear any particular clothes or not to wear any particular clothes." While there are no Mississippi cases directly on point Weathers Bros. Transfer Co. v. Jarrell, 33 S.E.2d 805, 72 Ga. App. 317 (1945) would seem substantially analogous. In that case, the plaintiff, a U.S. Navy Lieutenant Commander, appeared at trial and testified while dressed in his official uniform. Such was not sufficient to establish that the jury was unduly influenced against the defendant so as to require a reversal. Likewise, in the instant case, there is nothing to indicate that the amount of the verdict was unjustly increased due to the fact that Ellis appeared at trial in his uniform. The evidence alone sustains the verdict; this assignment of error is without merit.
*287 III. Did the trial court err by allowing Dr. Leo Scanlon to testify on the effects of alcohol?
During his case in chief, Bill Ellis offered the testimony of Dr. Leo Scanlon by way of a video taped deposition. Dr. Scanlon was tendered as an expert in the fields of medicine, pathology and blood alcohol and the effects of alcohol on the human body.
After Dr. Scanlon testified about his credentials and the procedures for administering blood alcohol tests, he was presented with a question in hypothetical form. Dr. Scanlon was asked to assume that Lonnie Edwards, a 34-year-old male in good general health, on June 14, 1980, at approximately 1:00 o'clock p.m., was involved in an auto accident. He was eventually transported to Baptist Hospital in Memphis, Tennessee, where, at approximately 5:45 p.m., a blood sample was taken which was then delivered to the chemistry lab at Baptist Hospital for analysis. The results of that analysis revealed 180 milligrams of alcohol per milliliter of blood (0.18%). Dr. Scanlon was also directed to assume that no additional drinks were consumed between the time of the accident and the time the blood sample was taken.
Dr. Scanlon then stated that: "180 milligrams or .18 is really intoxicated." Based on a standard rate of metabolism of 20 milligrams per hour, he indicated that Edwards's blood alcohol level would have been approximately 260 milligrams at the time of the accident. Dr. Scanlon went on to testify to the physical capabilities and characteristics of a person with 180 milligrams alcohol per milliliter of blood. He stated that such a person would have a very poor reaction time, very poor coordination, double vision, and depressed hearing. Such a person, he stated, could under no circumstances be considered a safe driver. Furthermore, a driver with a blood alcohol level of 260 milligrams would be even more adversely affected.
Prior to presentation of the video taped deposition in court, counsel for Lonnie Edwards objected, stating that Dr. Scanlon's testimony was "Based on a hypothetical situation regarding the blood alcohol test ... in direct violation of § 63-11-7 and 9 of the Mississippi Code of 1972, Ann., as amended, ... The statute provides that they cannot get into ... the result of the test... ."
This objection was overruled for the same reasons as discussed under the first assignment of error; no other objections were made.
On appeal, Edwards asserts that the testimony of Dr. Scanlon was highly prejudicial, served no useful purpose and was unnecessary. The basis of admission of expert testimony is that of necessity, and Edwards now claims that Scanlon's testimony invaded the province of the jury without necessity, a knowledge of the effects of alcohol on drivers not being outside the experience of the average person.
Testimony of a pathologist as to the effect of blood alcohol content upon the intoxication of a person is competent evidence. See McNamee v. State, 313 So.2d 392, 393 (Miss. 1975). (Such testimony ruled admissable in criminal prosecution.) Furthermore, other than the objection based on § 63-11-7 as mentioned above, Edwards failed to object to the contents of Scanlon's testimony either at the deposition, or before or during trial. As objections to evidence cannot be raised for the first time on appeal, Gilmore-Puckett Lumber Co. v. Bank of Tupelo, 177 Miss. 152, 170 So. 682 (1936); Garraga v. Yellow Cab Co., 222 Miss. 739, 77 So.2d 276 (1955), Edwards has lost his opportunity to do so.
It is not permissible to wait until after a verdict has been rendered to raise questions such as this after it has turned out that the verdict is unfavorable. It is too late to raise the point for the first time in a motion for a new trial. The trial court may not be put in error where timely requests for a ruling has not been made. Timely objections ... are necessary to preserve such points on appeal.
Anderson v. Jaeger, 317 So.2d 902, 907 (Miss. 1975).
*288 IV. Did the court err by allowing testimony of two witnesses alleged to have "reconstructed" the accident?
The testimony of two witnesses, Highway Patrol Officer Carlton Hays and Civil Engineer Marcus Dean Williams, is here challenged. Officer Hays, who arrived on the scene some thirty-four minutes after the collision, testified as to skid marks present after the accident and to the probable routes of travel of the vehicles. The skid marks indicated that Edwards's vehicle was on the wrong side of the road at the time of the accident. The court sustained Edwards's objection to testimony as to the "point of impact" although that phrase was used subsequently as a general point of reference in Hays's testimony:
The physical evidence we noted; there is a set of tire tracks leading from the approximate point of impact or a general location of the accident... . [T]he tracks led into the edge of the roadway, and the ditch; came back out into the road, oh, about 375 or 380 feet from where the accident occurred ... and came back into the road angling across the road at about 250 or 60 feet from the point of impact.
Williams, a physical and civil engineer, testified to the general condition of the roadway where the accident occurred and to the dimensions of the vehicles involved in the accident. At Edwards's objection, Williams was precluded from pinpointing the position of the vehicles involved in the accident.
There is no question but that a witness may testify to the physical facts found at the scene. Lynch v. Suthoff, 220 So.2d 593, 596 (Miss. 1969). In the instant case, there was no actual reconstruction of the accident. The witnesses were limited to their observations of physical circumstances attendant to the collision; hence, this assignment of error is without merit.
V. Did the court err by refusing jury instruction D-3 on assumption of risk?
Edwards submitted the following instruction on the doctrine of assumption of risk:
The court instructs the jury that if you find from a preponderance of the evidence in this case that plaintiff Ellis knew or should have known that he was placing himself in a position inconsistent with his safety by chasing the vehicle on the narrow, dusty, gravel road, and that he appreciated the danger and that he deliberately and voluntarily chose to expose himself to that danger in such a manner as to assent to the continuance of this dangerous situation for two or three miles or more, then, in that event, the plaintiff Ellis assumed the risk of injury and cannot recover from the defendant and your verdict shall be for the defendant.
While there is nothing inherently wrong with the instruction on its face, it was refused because it was found to be not supported by the evidence. Edwards's argument that Ellis was chasing closely behind the fleeing vehicle was not supported by any evidence. Edwards himself was disoriented and never saw the patrol car with which he collided. Ellis, on the other hand, estimated that he was 100 yards behind the fleeing vehicle and that he saw Edwards's pickup exit the dust cloud 40 to 50 yards ahead of his patrol car. Edwards makes much of the distinction as to whether Ellis was "pursuing" or merely "following" the fleeing vehicle. The fact is there was absolutely no indication, other than Edwards's bare assertion, that Ellis acted in a manner as to in any way assume the risk of such a collision as occurred. Had the trial court granted Instruction D-3, it would have introduced before the jury matters not presented in evidence. To have done so would have been error. Pevey v. Alexander Pool Co., 244 Miss. 25, 139 So.2d 847 (1962).
VI. Was the jury's verdict grossly excessive?
The jury awarded Ellis a judgment of $80,000. That amount was not excessive in light of Ellis's injuries, his permanent disability resulting from those injuries, and his projected life expectancy.
*289 The injuries suffered by Ellis at the time of the collision were extensive: a severe laceration and fracture of his left knee; two broken ribs; numerous contusions and lacerations over his head, face and entire upper body. Testimony showed that as a result of the accident Ellis incurred $2,264.55 in medical bills, a sum greatly mitigated by the fact that his wife, a registered nurse, was able to provide free care and was able to have him released from the hospital early. Also as a result of the collision, Ellis was unable to work for approximately six to seven weeks.
Evidence from both expert and lay witnesses indicated the lingering effects of Ellis's injuries. According to one doctor, Ellis was left with an atrophy of his injured left leg, resulting in a permanent 15% impairment of function in that limb. Acquaintances noticed a marked reduction in Ellis's participation in recreational activities that he had enjoyed prior to the accident. Highway Patrol officers testified to the physical nature of a patrolman's job and the additional difficulties Ellis would face as a result of his weakened leg.
In augmentation of the above, Ellis was only 26 years old at the time of the accident; he had a remaining life expectancy of 46.5 years. The permanent disability and impairment of function will affect Ellis for the rest of his life.
The amount of damages to be awarded to an injured litigant is primarily a question of fact for the jury. Boyd v. Smith, 390 So.2d 994 (Miss. 1980); New Orleans and N.E.R.R. Co. v. Weary, 217 So.2d 274 (Miss. 1968); Jones v. Welford, 215 So.2d 240 (Miss. 1968). The jury's verdict will not be disturbed unless it is so grossly excessive as to shock the conscience, or evidence bias, passion or prejudice on the part of the jury. G.M.A.C. v. Layton, 353 So.2d 749 (Miss. 1977); Harkins v. Paschall, 348 So.2d 1019 (Miss. 1977); Anderson v. Jaeger, 317 So.2d 902 (Miss. 1975). As this Court said in the case of City of Jackson v. Locklar, 431 So.2d 475 (Miss. 1983):
The jury's verdict is a finding of fact. Unless we can say that no rational jury could on this proof have assessed damages [in the amount awarded] the award must be left undisturbed. We will not vacate or reduce a damage award unless it is so out of line as to shock the conscience of the court.
Id. at 481.
The injuries and permanent impairment suffered by Ellis justified the jury's verdict; it is not so excessive as to shock the conscience, or evidence bias or prejudice. The amount of the award will not be disturbed.
For the reasons stated, this case should be and is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.