649 So.2d 184 (1995)
Lawrence Timothy HARVEY
v.
Bonnie B. WALL.
No. 91-CA-00973.
Supreme Court of Mississippi.
January 19, 1995.
*185 Anselm J. McLaurin, McLaurin & McLaurin, Brandon, for appellant.
Robert A. Miller, Watkins & Eager, Jackson, for appellee.
Before HAWKINS, C.J., and JAMES L. ROBERTS, Jr. and SMITH, JJ.
ROBERTS, Justice, for the Court:
This appeal comes to us from the Circuit Court of Rankin County, Mississippi, wherein the appellant, Lawrence Timothy Harvey, was granted a peremptory instruction as to liability against Bonnie Wall and was awarded $5,300.00 for personal injuries received as a result of an automobile accident. Feeling aggrieved with the amount of the award, Harvey appeals to this Court asserting the following errors:
I. THE VERDICT OF THE JURY IS CONTRARY TO THE OVERWHELMING WEIGHT OF THE CREDIBLE EVIDENCE, OR IS THE RESULT OF BIAS PREJUDICE OR PASSION ON THE PART OF THE JURY.
II. THE TRIAL COURT ERRED IN REFUSING TO GRANT HARVEY AN ADDITUR, OR IN THE ALTERNATIVE, A NEW TRIAL AS TO DAMAGES ONLY.

STATEMENT OF THE FACTS
On November 20, 1989, Lawrence Timothy Harvey (Harvey) was in his father's 1989 Mazda pickup truck traveling west on Barrow Street in Pearl. At the same time, Bonnie Wall (Wall) and her one year old daughter, Hannah, were in Wall's car traveling south on Louisa Street when she ran the stop sign at the intersection of those two streets and collided with Harvey's truck.
Both vehicles wound up in a yard and were totaled in the accident. Hannah sustained a bruise on her head and was treated at the hospital, but was not kept overnight. Harvey testified that he was knocked unconscious and that when he regained consciousness his left knee hurt and he had cuts on his forehead and face where he had hit the passenger *186 door of the truck. Harvey was taken by ambulance to Rankin General Hospital where the cuts were treated and his leg was x-rayed. He was given pain medication and sent home.
Harvey testified that prior to the accident he was in good health, had no knee problems and ran three miles per day. He continued to have pain in his knee after the accident, so he went to see Dr. Edgar Bobo who recommended he visit Dr. McWillie Robinson at the Bone and Joint Clinic. Dr. Robinson, an orthopedic surgeon, x-rayed Harvey's knee and gave him a prescription for pain medication. In February 1990, he saw Dr. Barrett, another orthopedic surgeon. Dr. Barrett did a magnetic resonance imagining (MRI) scan on Harvey's leg which read as normal, showing no tears in the cartilage or the ligaments. Since Harvey had experienced pain for several months it was decided that Dr. Barrett would perform an arthroscopic examination of the knee. The surgery was performed as an out-patient procedure at River Oaks Hospital.
Dr. Barrett testified at deposition that he did not find much other than the soft tissue lining of the knee was slightly irritated. Another MRI was done a week before the trial and again it was normal. Dr. Barrett believed that Harvey's problem was that "the knee cartilage which is the spacer between the bones, the whole thing is popping in and out. It is not a tear in it but it is just popping in and out. It is kind of irritating the tissue." Dr. Barrett estimated that Harvey had a ten percent impairment of the left leg and there would probably be some pain associated with it in the future. He stated that Harvey would need to exercise the knee at home for the rest of his life. He prescribed a brace for the knee which Harvey continued to wear at the time of trial. Dr. Barret could not remember placing any limitations on Harvey's activities. Dr. Barrett did not testify that Harvey's knee problems were a result of the accident. He stated that he had seen this type of membrane irritation in runners who ran as often as Harvey testified he ran before the accident.
At the time of the accident Harvey was nineteen years old, he was a nursing student at Hinds Community College and worked part-time at Service Drugs. He estimated that because of the accident he missed one hundred forty-six (146) hours of work at four dollars ($4.00) per hour. At the time of trial Harvey was still a student and he worked part-time at University Medical Center as an anesthesia technician. He stated that he could no longer run or exercise like he had in the past and that his knee hurt when he had to stand for long periods of time as was required in his job. Harvey stated that he joined a health club in order to do his exercises so he would not have to drive to Jackson to see his therapist. Dr. Barrett testified that the exercises he prescribed for Harvey could be done at home.
Harvey's mother, Wanda Harvey, testified that after the accident Harvey was given medication for pain and that he had to stay home for a couple of weeks. She stated that prior to the accident Harvey ran frequently, but that he could no longer do so. Mrs. Harvey testified that Harvey still had pain from time to time.
Harvey presented into evidence hospital, doctor and prescription drug bills in an amount aggregating $4,695.20. He also stated that he lost wages in the amount of $584.00 (i.e. 146 hours X $4.00/hour). Harvey's medical bills plus his lost wages amounted to a total of $5,279.20, $20.80 short of the jury's award of $5,300.00.

DISCUSSION
Harvey argues that the jury's award of $5,300.00, an amount which exceeded the total of his lost wages and claimed medical expenses by only $20.80, was so inadequate as to be against the overwhelming weight of the credible evidence and a result of bias, passion or prejudice on the part of the jury. He goes on to argue that since the award was so unreasonable, it was error for the trial court to deny him an additur or alternatively, a new trial on the issue of damages.
Wall contends the jury verdict was not inadequate because the jury could have found at least $554.55 of Harvey's alleged medical expenses were not reasonable and necessary. If the jury did decide certain damages alleged *187 by Harvey were not reasonable, as Wall maintains, then this would mean the $5,300.00 jury verdict could have included up to $575.35 for Harvey's pain and suffering and the impairment to his leg.
This Court applies the abuse of discretion standard of review when determining whether a trial court erred in refusing an additur or a new trial. Rodgers v. Pascagoula Public School District, 611 So.2d 942, 945 (Miss. 1992); Odom v. Roberts, 606 So.2d 114, 118 (Miss. 1992); Motorola Communications & Electronics, Inc. v. Wilkerson, 555 So.2d 713, 723 (Miss. 1989). It is primarily the province of the jury to determine the amount of damages to be awarded and the award will normally not "be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." Rodgers, 611 So.2d at 945. The party seeking the additur must prove his injuries, damages and loss of income. In deciding if the burden has been met, we must look at the evidence in the light most favorable to the party in whose favor the jury decided, granting that party any favorable inferences that may reasonably be drawn therefrom. Miss. Code Ann. § 11-1-55 (Supp. 1994); Rodgers at Id.; Green v. Grant, 641 So.2d 1203, 1207-08 (Miss. 1994); Odom, 606 So.2d at 114; Copeland v. City of Jackson, 548 So.2d 970, 974 (Miss. 1989); Hill v. Dunaway, 487 So.2d 807, 811 (Miss. 1986).
The authority to impose an additur is found in Miss. Code Ann. § 11-1-55 which reads:
The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the jury or trier of the facts was influenced by bias, prejudice, or passion, or the damages awarded were contrary to the overwhelming weight of credible evidence. If such additur or remittitur be not accepted then the court may direct a new trial on damages only. If the additur or remittitur is accepted and the other party perfects a direct appeal, then the party accepting the additur or remittitur shall have the right to cross appeal for the purpose of reversing the action of the court in regard to the additur or remittitur.
"[E]vidence of corruption, passion, prejudice or bias on the part of the jury is an inference, if any, to be drawn from contrasting the amount of the verdict with the amount of the damages." Rodgers v. Pascagoula Public School Dist., 611 So.2d 942, 944-45 (Miss. 1992); Pham v. Welter, 542 So.2d 884, 888 (Miss. 1989); Matkins v. Lee, 491 So.2d 866, 868 (Miss. 1986); City of Jackson v. Ainsworth, 462 So.2d 325, 328 (Miss. 1984); Biloxi Electric Co., Inc. v. Thorn, 264 So.2d 404, 405 (Miss. 1972). Although this Court has the power to impose an additur we will not exercise that authority indiscriminately. "Additurs represent a judicial incursion into the traditional habitat of the jury, and therefore should never be employed without great caution." Rodgers, 611 So.2d at 945. See also, Green v. Grant, 641 So.2d at 1208-09; Gibbs v. Banks, 527 So.2d 658, 659 (Miss. 1988).
In the past this Court has not hesitated to imposed an additur when we have found a jury's verdict did not sufficiently compensate a plaintiff for pain and suffering. In Rodgers v. Pascagoula Public School Dist., 611 So.2d 942 (Miss. 1992), Michael Rodgers was a passenger in a car driven by his sister, Gloria Rodgers. While the Rodgers' car was stopped at a stop sign a Pascagoula school bus misjudged a left turn at the intersection and sideswiped the Rodgers' car. Rodgers testified that his head and body hit the right front window, but he was not rendered unconscious. An accident report was completed then Rodgers accompanied his sister to at least three different places before going to the emergency room. The emergency room records show that Rodgers sustained a contusion, or a bruise, on his head, but there were no signs of trauma or a concussion. Rodgers continued to complain of pain and saw at least seven different doctors. He was prescribed pain medication on at least six of those occasions. The jury returned a verdict in an amount equal to Rodgers' medical expenses. We held the jury verdict to be against the overwhelming weight of the evidence and imposed an additur because there *188 was evidence of Rodgers' pain and suffering and he should have been compensated for such.
The Court in Pham v. Welter, 542 So.2d 884 (Miss. 1989), granted an additur to Pham, who was severely injured in an automobile accident and whose negligence for the accident was fixed by the jury at 60%. The Pham Court opined
that the jury ignored the strength of the evidence supporting Pham's "pain and suffering" and permanent partial disability. We hold that the finding of $30,000, only adequately compensated Pham for the $28,682.70 in special damages. This figure obviously ignores the categories of past and future pain and suffering and permanent partial disability... . Therefore, after a very careful examination of the record, we today order an additur of $30,000 to the finding of the jury as to damages and permanent partial disability. (See Miss. Code Ann. (1972) § 11-1-55 and Altom v. Wood, 298 So.2d 700 (Miss. 1974). We base this order on the fact that the jury was obviously influenced by "bias, prejudice, or passion ... [and] the damages awarded were contrary to the overwhelming weight of credible evidence."
542 So.2d at 889.
Where there is contradictory testimony concerning the extent of damages we have refused to grant an additur. In the recent case of Green v. Grant, supra, Green put on disputed testimony that as a result of a car accident, which Grant admitted was her fault, she incurred medical expenses of $2,199.25 and missed 76 hours of work resulting in lost income of $1,330.58. There was also testimony concerning past, present and future pain and suffering stemming from the accident. Significant contradictory evidence was presented that Green was not seriously injured as a result of the accident. The jury awarded Green $2,000.00 in damages. Her motion for a new trial or in the alternative an additur was denied by the trial court. In Green we refused to grant an additur saying that
the extent of Green's injuries, and the amount, reasonableness and necessity of her damages are disputed by the parties. "When testimony is contradicted, this Court will defer to the jury, which determines the weight and worth of testimony and the credibility of the witness at trial." Odom, 606 So.2d at 118 (citing Stubblefield v. Walker, 566 So.2d 709, 712 (Miss. 1990) and Motorola, 555 So.2d at 723).
Green, 641 So.2d at 1209.
Harvey compares the facts and holding in Edwards v. Ellis, 478 So.2d 282 (Miss. 1985), to the case sub judice. In Edwards, Ellis, a highway patrolman, was injured in an accident which resulted from a head on collision with Edwards' pickup truck. The jury awarded Ellis $80,000 in damages and this Court held that in light of the injuries sustained by Ellis the verdict was not excessive. Ellis suffered "a severe laceration and fracture of his left knee; two broken ribs; numerous contusions and lacerations over his head, face and entire upper body." Ellis incurred $2,264.55 in medical bills. These medical expenses were mitigated because Ellis's wife was a registered nurse and was able to have him released early from the hospital where she could care for him at home for free. Ellis missed six to seven weeks of work because of the accident and suffered a 15% permanent impairment of his left leg. At the time of the accident Ellis was only 26 years old and had a remaining life expectancy of 46.5 years. This Court held, "[t]he injuries and permanent impairment suffered by Ellis justified the jury's verdict; it is not so excessive as to shock the conscience, or evidence bias or prejudice. The amount of the award will not be disturbed." 478 So.2d at 289.
Harvey's injuries were not nearly as severe as Ellis's, but the proof is uncontradicted that he did sustain some pain and suffering. Harvey stated that he could no longer run as he used to do and that there was pain in his knee when he stood for long periods of time, which he was required to do in his job. Dr. Barrett testified that Harvey would probably have some pain in the future. He also estimated Harvey had sustained approximately a 10% impairment of his left leg, although he placed no restrictions on Harvey's activities.
*189 The question that must be answered is whether the jury sufficiently compensated Harvey for his pain and suffering and the impairment to his leg. Wall argues that it was possible for the jury to determine that Harvey did not prove by a preponderance of the evidence that the following alleged medical expenses introduced through Plaintiff's Exhibit 1 were reasonable and necessary:

$ 75.00 Gober's Karate and Family Fitness Center
$ 69.95 Tagamet (3/13/90)
$ 69.95 Tagamet (4/18/90)
$ 69.95 Tagamet (5/23/90)
$ 20.00 Dr. Gene Barrett (office visit 7/23/91)
$250.00 MRI scan (7/24/91)

Totaled, these expenses amount to $554.55. The counsel for Wall voiced no objection to Harvey introducing these medical bills into evidence.
Miss. Code Ann. § 41-9-119 states: "Proof that medical, hospital, and doctor bills were paid or incurred because of any illness, disease, or injury shall be prima facie evidence that such bills so paid or incurred were necessary and reasonable."
When a party takes the witness stand and exhibits bills for examination by the court and testifies that said bills were incurred as a result of the injuries complained of, they become prima facie evidence that the bills so paid or incurred were necessary and reasonable. However, the opposing party may, if desired, rebut the necessity and reasonableness of the bills by proper evidence. The ultimate question is then for the jury to determine.
Jackson v. Brumfield, 458 So.2d 736, 737 (Miss. 1984). See, Green, 641 So.2d at 1209; Biloxi Regional Medical Center v. David, 555 So.2d 53, 55 (Miss. 1989).
Although Wall now argues the jury could have found $554.55 of Harvey's alleged expenses to be unnecessary or unreasonable, at trial the only one of these expenses that Wall attempted to rebut the reasonableness and necessity of is the $75.00 Harvey spent joining Gober's Karate and Family Fitness Center. The jury could have found this to be an unnecessary expense. Harvey testified that it was recommended he join a gym so he would not be required to drive to Jackson daily to do the therapy on his knee. The necessity of going to either a physical therapist or a gym was contradicted by Dr. Barrett's testimony. Dr. Barrett stated that other than having sent Harvey to physical therapy a couple of times when he had tendinitis, Harvey could do the prescribed exercises at home on his own. The jury could have concluded from this testimony that the $75.00 spent on the gym was not a necessary or reasonable expense associated with Harvey's injury.
The jury was given the following instruction concerning an award for damages:
The Court instructs the jury that in arriving at your verdict for the Plaintiff, you may take into consideration any of the following: [sic] elements which you find have been proved by a preponderance of the evidence.
1. Doctor, hospital and medical bills incurred;
2. Pain and suffering endured by the Plaintiff;
3. The nature, extent and permanency, if any, of the Plaintiff's injuries;
4. Future pain which you believe the Plaintiff will endure;
5. Loss of wages incurred by Plaintiff.
While it is impossible for us to know what was in the mind of the jury when they awarded Harvey $5,300.00 it is possible that $95.80 not just $20.80 of that award was meant to compensate Harvey for the pain and suffering associated with his injuries. The standard of review requires that we look at the evidence in the light most favorable to Wall and give to her all favorable inferences that may be drawn therefrom. Even if this is done, $95.80 is inadequate compensation for Harvey's past and future pain and suffering and the 10% impairment to his left leg. Although Harvey's injuries were not severe when compared with the facts of some other cases where this Court has granted an additur, we believe the jury award to be against the overwhelming weight of the evidence and that an additur is required in this case. Wall has the right to either accept the additur or demand a new trial on the issue of damages *190 only. Odom, 606 So.2d at 121; Altom v. Wood, 298 So.2d 700, 702 (Miss. 1974).

CONCLUSION
Considering the uncontradicted testimony in this case that Harvey's knee injury did cause him pain and suffering and had resulted in an approximately 10% impairment to his left leg the jury's verdict which was just $20.80 over his alleged special damages is inadequate and an additur should be imposed.
Accordingly, we direct a new trial on the issue of damages only unless Wall accepts an additur of $2,000.00. If Wall accepts the additur, the judgment will be affirmed for $7,300.00 plus interest from date of judgment. Otherwise, the judgment will be reversed and remanded for a new trial on damages only.
AFFIRMED WITH ADDITUR TO HARVEY, OR IN THE ALTERNATIVE, A NEW TRIAL AT WALL'S OPTION.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, McRAE and SMITH, JJ., concur.