724 So.2d 1105 (1998)
Wardell HAYWOOD, Appellant,
v.
Henry COLLIER, Appellee.
No. 97-CA-00441 COA.
Court of Appeals of Mississippi.
December 18, 1998.
William B. Sullivan, Attorney for Appellant.
Robert D. Gholson, Craig Newman Orr, Laurel, Attorneys for Appellee.
BEFORE THOMAS, P.J., DIAZ, HERRING, AND SOUTHWICK, JJ.
HERRING, J., for the Court:
¶ 1. Wardell Haywood appeals from the jury verdict and resulting judgment awarding him $2,000 for damages sustained in an automobile accident involving himself and the appellee, Henry Collier. Haywood argues that the judgment is against the overwhelming weight of the evidence and as a result he is entitled to an additur, or in the alternative, *1106 a new trial. After a review of the testimony presented at trial, we are unconvinced that the trial court abused its discretion in ruling that the jury's verdict was not so low as to evince bias, passion, or prejudice against Haywood. Therefore, we affirm the judgment of the lower court.

A. THE FACTS
¶ 2. On February 2, 1995, Wardell Haywood was involved in an automobile accident with Henry Collier wherein Collier negligently struck Haywood's vehicle from the rear. Collier admitted liability, and the case came on for trial on the issue of damages only. Collier testified that the accident in question was a minor one, a "fender-bender". Additionally, he stated that after the accident both drivers got out of their vehicles and spoke, and upon asking Haywood if he was all right, Haywood responded to Collier that he was fine. Collier testified that after the accident, Haywood did not appear to be in pain or have any limitation in movement. Both parties drove their vehicles away from the scene of the accident.
¶ 3. Haywood testified that on the Sunday following the Saturday afternoon accident, he woke up with pain in his right side and lower back. He visited Dr. Ken Grafton, his family physician, on the following Monday, who gave him some medicine for his pain. Haywood reported to work after his appointment with the doctor, but he testified that at work, the pain in his lower back and right side persisted. He continued to work in this condition for six days. He began seeing Dr. Donald Cook, an orthopedic surgeon, on February 21, 1995. Dr. Cook testified at trial through deposition that Haywood was indeed injured, that he did suffer pain from his injuries, and that his pain and injury will probably be permanent. Dr. Cook further testified that Haywood would not be able to return to work to perform heavy manual labor. Following his six-day period of work after the accident on February 2, 1995, Haywood has worked only one day which was sometime in 1996. On that day in 1996, Haywood went to work, stayed for one hour, and then left. He testified that he continues to have trouble bending and lifting and that he was in pain at the time of trial, on December 16, 1996.
¶ 4. Haywood filed his original complaint on July 17, 1995, and his amended complaint on September 1, 1995, alleging negligence on the part of Collier and damages in the amount of $257,000 plus costs of court. The case came on for trial on December 16, 1996. Since Collier admitted liability, the only issue before the court was that of damages. The jury awarded Haywood $2,000. Aggrieved, he appeals to this court and prays for an additur, or in the alternative, a new trial.

B. THE ISSUE
¶ 5. Haywood raises a single issue in five interrelated parts on appeal which we quote verbatim from his appellate brief:
I. THIS APPEAL DEALS WITH ONLY ONE ISSUE: THE INADEQUACY OF DAMAGES AWARDED BY THE JURY.
II. THE APPELLEE NEVER CONTESTED LIABILITY.
III. THE APPELLEE OFFERED NO EVIDENCE OF PHYSICAL ACTIVITIES BY THE APPELLANT WHICH WOULD BE INCONSISTENT WITH HIS CLAIM FOR BODILY INJURIES.
IV. THE APPELLANT WAS SEEN BY SEVERAL PHYSICIANS. ONLY ONE WAS OFFERED BY THE APPELLANT.
V. THE APPELLEE DID NOT CALL ANY OF THE OTHER PHYSICIANS OR INTRODUCE ANY MEDIAL [SIC] EVIDENCE TO CONTROVERT THE TESTIMONY OF DR. DONALD COOK.

C. ANALYSIS
WERE THE DAMAGES AWARDED THE APPELLANT CONTRARY TO THE OVERWHELMING WEIGHT OF CREDIBLE EVIDENCE OR WAS THE VERDICT OF THE JURY SO INADEQUATE AS TO EVINCE BIAS, PREJUDICE, OR PASSION ON THE PART OF THE JURY?
¶ 6. Haywood claims that he has proven "special losses in excess of $6,000 and loss of wages in the amount of $30,000." He further alleges that the jury verdict awarding *1107 him $2,000 was clearly against the overwhelming weight of the evidence, and therefore, he is entitled to an additur, or in the alternative, a new trial. "The scope of appellate review in an additur appeal is limited to determining whether the trial court abused its discretion." Rodgers v. Pascagoula Pub. Sch. Dist., 611 So.2d 942, 945 (Miss.1992). "The party seeking the additur has the burden of proving his injuries, damages and loss of income. In determining whether this burden is met, this Court must view the evidence in the light most favorable to the defendant, giving that party all favorable inferences that reasonably may be drawn therefrom." Jack Gray Transp., Inc. v. Taylor, 725 So.2d 898 (Miss.1998). "This Court applies the abuse of discretion standard of review when determining whether a trial court erred in refusing an additur or a new trial. It is primarily the province of the jury to determine the amount of damages to be awarded and the award will normally not `be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.'" Harvey v. Wall, 649 So.2d 184, 187 (Miss.1995) (citations omitted).
¶ 7. The Supreme Court of Mississippi has consistently enunciated the principle that a jury verdict is to be accorded substantial deference. Odom v. Roberts, 606 So.2d 114, 118 (Miss.1992); Purina Mills, Inc. v. Moak, 575 So.2d 993, 997 (Miss.1990); Motorola Communications & Elecs., Inc. v. Wilkerson, 555 So.2d 713, 723 (Miss.1989). "Each case involving the issue of an additur must `necessarily be decided on its own facts.'" Green v. Grant, 641 So.2d 1203, 1208 (Miss.1994) (citing Leach v. Leach, 597 So.2d 1295, 1297 (Miss.1992)). Also, an additur represents "a judicial incursion into the traditional habitat of the jury" and should never be applied without great caution. Gibbs v. Banks, 527 So.2d 658, 659 (Miss.1988).
¶ 8. Upon being presented with Haywood's motion for additur, or in the alternative, a new trial, the trial court held the following: "After due deliberation and consideration, the Court finds that there was substantial evidence introduced before the jury upon which the jury could have based its verdict in this case. Therefore, the Court finds that the verdict of the jury is consistent with the evidence, and not a product of bias, passion or prejudice on the part of the jury." We agree with the trial court.
¶ 9. The amount of damages to which Haywood is entitled is strongly contested by the parties. Collier argues that the $2,000 jury verdict was "consistent with the great and overwhelming weight of the evidence presented at trial and did not evince evidence of bias or prejudice toward the [appellant]." Haywood argues that he "offered evidence of specials in excess of $6,000 and loss of wages in excess of $32,000 ..." and the verdict of $2000 "is willfully inadequate and the appellant is entitled to additur or a new trial."
¶ 10. In the present case the trial court instructed the jury to consider the following evidence in determining the amount of damages to award to Haywood:
1. Physical pain and suffering (both past, present, and future)
2. Loss of income (both past, present, and future)
3. Medical expenses (both past, present, and future)
4. Loss of enjoyment of life by virtue of physical restrictions resulting from the injuries sustained in the subject accident, if any.
¶ 11. Haywood testified that before the accident he was "maybe two men and a half," and he has not been the same since the accident. He testified further that when he woke up on the day after the accident, he had pain in his right side and lower back, and it was painful to do even a task as simple as walking. He later testified that he also had muscle spasms in his shoulders. He went to see his regular doctor, Dr. Grafton, the Monday after the Saturday accident, and returned to work that evening. After six days of work in this painful condition, Haywood returned to see Dr. Grafton. At that point, and referring to Dr. Grafton, he testified, "I think he laid me off", meaning that Grafton told him not to return to work.
¶ 12. On cross-examination, counsel for Collier brought out the fact that Haywood *1108 was in another class action lawsuit which he failed to mention when asked about other litigation he was involved in during a deposition earlier in the year. In addition, when directly asked about prior medical history in a deposition and in interrogatories, Haywood testified specifically that he had never had any trouble with his back. However, on cross-examination he admitted that he indeed did have trouble with his back in 1990 or 1991, that he went to see Dr. Grafton for that back trouble, and that Dr. Grafton gave him some medicine for it. When asked about the discrepancy in his sworn testimony, Haywood asserted that he did not consider the prior back problem to be serious. Further, Haywood admitted that when he selected Dr. Cook as his physician, he was aware that Dr. Cook did not perform surgery and did not have admitting privileges at any hospital.
¶ 13. Dr. Cook first saw Haywood on February 21, 1995. He found, in addition to Haywood's complaints that he was uncomfortable, that Haywood's muscles were reacting more than one would expect when he moved his neck and back, which would indicate a reasonable probability that he experienced pain when he moved them. He also found that Haywood did not have normal motion. After this initial diagnosis, Dr. Cook prescribed a muscle relaxant, gave Haywood an additional prescription for pain relief in case the Tylenol he advised Haywood take was not enough, and recommended the use of heat to control his pain at home.
¶ 14. Haywood returned to Dr. Cook on April 3, 1995, complaining of pain in his neck, shoulders, and back. Dr. Cook testified that Haywood had a Magnetic Resonance Imaging (MRI) scan performed in Laurel, and the results came back normal. However, Dr. Cook asserted in his testimony that the MRI would not show any injury to the muscles or ligaments in any event.
¶ 15. Haywood visited Dr. Cook again on April 12, 1995, to discuss the results of the MRI. During this visit, Haywood claimed he was a little better, but that he was still having trouble with his back and neck. Haywood returned to Dr. Cook on May 3, May 31, June 27, and on July 19, 1995, each time complaining of the same problems and asserting that he was not improving. On July 19, Dr. Cook recommended that Haywood go to a pain clinic. He returned to Dr. Cook on September 11, 1995, at which time Dr. Cook referred him to Dr. Jeffery Summers, an anesthesiologist specializing in pain treatment. Haywood saw Dr. Summers and felt that Dr. Summers' treatment had helped him. He convinced Dr. Cook to release him to go back to work. He then returned to work, but Dr. Cook testified that Haywood was able to work only a few hours before the pain caused him to have to stop. He returned to Dr. Cook on February 14, 1996.
¶ 16. Dr. Cook testified that in his opinion, the car accident which is the subject of this action was the cause of Haywood's medical problems in his back and neck. Dr. Cook also testified that he had serious doubts that Haywood will be able to return to his present job and perform it on a regular basis without pain, because the job involved heavy manual labor. He testified based on reasonable medical probability, Haywood's physical problems are permanent and "every once in a while he will probably at least need to see a doctor and will probably have to buy some medicine for it."
¶ 17. On cross-examination, counsel for Collier brought out facts which called into question the credibility of the testimony of Dr. Cook. First, Collier established the fact that Dr. Cook had not performed surgery since 1988 and had no admitting privileges at any hospital at the time of trial. In 1989, Dr. Cook sent an attorney solicitation letter to defense and plaintiff's attorneys across the state informing them of his availability to evaluate patients and to testify at trial. Also, on cross-examination, Dr. Cook testified that his medical practice is now a clinic practice where he primarily evaluates Social Security Disability claimants and injured parties involved in legal proceedings. He also performs independent evaluations for insurance companies. Additionally, the defense introduced an authorization form allowing Haywood's "lawyer to pay Dr. Cook directly out of the proceeds of any lawsuit that he might bring arising out of these injuries."
¶ 18. In addition to the testimony of the witnesses, the jury saw photographs of the *1109 vehicles after the collision. The defense attempted to show that the photographs depicted minimal damage. With all of this evidence before them, the jury found that Haywood was entitled to $2,000 to compensate him in this lawsuit. It is the jury that determines "the weight and worth of testimony and the credibility of the witness at trial." Odom v. Roberts, 606 So.2d 114, 118 (Miss. 1992). As stated above, "[t]his Court applies the abuse of discretion standard of review when determining whether a trial court erred in refusing an additur or a new trial. It is primarily the province of the jury to determine the amount of damages to be awarded and the award will normally not `be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.'" Harvey v. Wall, 649 So.2d 184, 187 (Miss.1995) (citations omitted). In conclusion, we find that the jury was justified in its assessment of the damages to which Haywood was entitled. The jury was presented with evidence that showed conflicting sworn testimony of the appellant concerning his prior medical condition; that called into question the credibility of the only doctor testifying at trial; and photographs which showed minimal damages suffered by the vehicles involved in the accident. We will not disturb the finding of the jury in the case sub judice because we find that the trial court judge did not abuse his discretion in ruling that the $2,000 verdict was not against the overwhelming weight of the evidence, and in no way evinced bias or prejudice on the part of the jury.
¶ 19. THE JUDGMENT OF THE JONES COUNTY CIRCUIT COURT IF AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., and COLEMAN, HINKEBEIN, KING, PAYNE and SOUTHWICK, JJ., concur.
DIAZ, J., concurs in result only.