MOORE, J.,
for the Court:
¶ 1. After trial in the Simpson County Circuit Court, the jury rendered its verdict of liability against Appellee Rose P. Canterbury and awarded Appellant Samuel M. Hubbard damages of $2,500. Hubbard moved the circuit court for additur or alternatively for new trial because the jury verdict did not fully compensate him for his medical expenses of $4,094.53 or allow anything for pain and suffering. Aggrieved by the circuit court’s refusal to grant an additur or new trial, Hubbard cites one issue on appeal, summarized as follows
WHETHER THE JURY VERDICT WAS THE RESULT OF BIAS, PASSION, AND PREJUDICE OR AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE THUS EVINCING TRIAL COURT ERROR IN REFUSING TO AWARD HUBBARD ADDITUR OR NEW TRIAL ON THE ISSUE OF DAMAGES.
Finding merit, we affirm upon condition of acceptance of additur by the defendant.
FACTS
¶ 2. Appellant Samuel M. Hubbard and Appellee Rose P. Canterbury were involved in a motor vehicle accident on April 17, 1996. Canterbury rear-ended Hubbard’s vehicle, which had stopped to allow oncoming traffic to clear pending his execution of a left turn. A photograph revealed minor damage to the rear-end of Hubbard’s automobile: the police report of the accident noted major damage to Canterbury’s vehicle.
¶ 3. Initially Hubbard denied feeling pain, according to Officer Dan Little, who investigated the accident in his capacity as officer for the Magee Police Department. Officer Little testified that Hubbard was out of his car and walking around at the accident scene. Hubbard described being “shook up,” and had no memory of exiting his vehicle. He further denied telling Officer Little that he was not in pain. At some point, Hubbard asked another police officer to summon an ambulance to transport him to the hospital. Hubbard denied that he requested an ambulance and testified that the police called the ambulance of their own volition.
¶ 4. Hubbard arrived at the Magee General Hospital emergency room complaining of neck pain, headache, and pain to his left hip. Emergency room physician, Dr. Warren, examined Hubbard upon his arrival at the hospital. Dr. Charles Pruitt III also examined Hubbard. Both doctors noted Hubbard had an old left hip injury. Hubbard testified that his left hip had been dislocated several years earlier, and that he had been told by his orthopedic doctor from the University Hospital in Jackson that hip replacement surgery was the only way to correct the problem. Dr. Pruitt observed that Hubbard had a good active range of motion of his neck, and noted that Hubbard had been moving his neck around despite Dr. Warren’s admonition not to move his neck. X-rays of Hubbard’s neck, taken at the hospital, were normal. Dr. Pruitt applied a soft neck brace to Hubbard’s neck and admitted him into the hospital. During his four day stay in the hospital, Hubbard complained numerous times of pain to his neck, head, and left hip, and to general soreness. Dr. Pruitt released Hubbard from the hospital on April 21, noting that Hubbard would follow up with his orthopedic physician.
¶ 5. A nurse noted in the hospital records that Hubbard told her that his attorney instructed him to get a second opinion regarding his condition. Hubbard relied upon his attorney to refer him to an orthopedic physician for follow-up treatment instead of seeking treatment from the orthopedic physician who had treated his hip *548 condition. His attorney referred him to Dr. William Warner, an orthopedic surgeon, whom Hubbard saw nine days after his release from the hospital. Dr. Warner x-rayed Hubbard’s neck. The x-ray, which Dr. Warner showed to the jury, revealed a slight straightening of Hubbard’s cervical curve. Dr. Warner opined that the straightening of the cervical curve indicated that Hubbard had suffered a muscle spasm. Dr. Warner ordered physical therapy to rehabilitate Hubbard’s neck. Upon completion of six weeks of physical therapy, Dr. Warner declared that Hubbard was “asymptomatic,” meaning that he had completely recovered from his neck injury. Dr. Warner testified that in his opinion Hubbard’s five day hospital stay was necessary. He further testified that the accident had aggravated Hubbard’s hip condition.
¶ 6. Hubbard incurred a total of $4,094.53 in medical expenses itemized as follows: $177, ambulance; $2, 229.50, Ma-gee General Hospital; $245, Dr. Pruitt; $747.03, Dr. Warner; and $696, Rehab Consultants (physical therapy). The jury awarded him $2,500. Canterbury offered one witness at trial: herself. She testified solely to the circumstances surrounding the collision. She did not testify regarding Hubbard’s demeanor after the accident. She neither corroborated nor refuted Hubbard’s claim of pain at the scene of the accident. Canterbury’s defense consisted of casting doubt on the extent of Hubbard’s injuries by attempts to impeach Hubbard and his expert, Dr. Warner, and by pointing out entries in the hospital records supporting her theory that Hubbard exaggerated his pain to inflate his damages.
WAS THE JURY VERDICT THE RESULT OF BIAS, PASSION, AND PREJUDICE OR AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE THUS EVINCING TRIAL COURT ERROR IN REFUSING TO AWARD HUBBARD ADDI-TUR OR NEW TRIAL ON THE ISSUE OF DAMAGES?
LAW AND ANALYSIS
¶ 7. Miss.Code Ann. § 11-1-55 (Rev. 1991) provides:
The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an addi-tur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of the credible evidence ....
¶ 8. This Court is limited to an abuse of discretion standard of review. Maddox v. Muirhead, 738 So.2d 742, 743 (Miss.1999) (citing Rodgers v. Pascagoula Public School District, 611 So.2d 942, 945 (Miss.1992)). The focus at the appellate level is whether the trial judge abused his discretion in denying the motion for addi-tur, not upon the jury’s action in awarding damages. McNair Transport, Inc. v. Crosby, 375 So.2d 985, 986 (Miss.1979). The burden of proving injury and other damages falls to the party seeking additur. Id. We must view the evidence in the light most favorable to the party against whom additur is sought and must give him the benefit of all favorable inferences that maybe reasonably drawn therefrom. Id. “Awards set by jury are not merely advisory and generally will not be ‘set aside unless so unreasonable as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.’ ” Maddox, 738 So.2d at 743 (citing Rodgers, 611 So.2d at 945). “ ‘Addi-turs represent a judicial incursion into the traditional habitat of the jury, and there *549 fore should never be employed without great caution.’ ” Id. (citing Gibbs v. Banks, 527 So.2d 658, 659 (Miss.1988)).
¶ 9. Evidence of bias, prejudice, or passion may be inferred by contrasting the amount of damages with the amount of the verdict. Green v. Grant, 641 So.2d 1203, 1209 (Miss.1994); Pham v. Welter, 542 So.2d 884, 888 (Miss.1989); James v. Jackson, 514 So.2d 1224, 1225 (Miss.1987).
¶ 10. “Proof that medical, hospital, and doctor bills were paid or incurred because of any illness, disease, or injury shall be prima facie evidence that such bills so paid or incurred were necessary and reasonable.” Miss.Code Ann. § 41 — 9— 119 (Rev.1993). The opposing party may rebut necessity and reasonableness by “proper evidence.” Jackson v. Brumfield, 458 So.2d 736, 737 (Miss.1984).
¶ 11. Hubbard submitted medical bills totaling $4,094.53, prima facie evidence that the bills were reasonable and necessary. The jury awarded him $2,500, which gave rise to an inference that the verdict was the product of bias, passion, or prejudice. To rebut the reasonableness and necessity of the medical bills, Canterbury was required to present proper evidence. Canterbury offered no evidence, choosing instead to rely upon her argument that she impeached both Hubbard’s and Dr. Warner’s testimony.
¶ 12. Canterbury cites Haywood v. Collier, 724 So.2d 1105 (Miss.Ct.App.1998), to support her position that impeachment of a plaintiffs witnesses is proper evidence which may be used to rebut the reasonableness and necessity of medical bills. In that case, Haywood was rear-ended by Collier who admitted liability. After the accident, Haywood was walking around and denied being in pain. He did not go to the hospital. Haywood testified to having back pain on the following day, and he sought treatment from his family doctor. Despite the pain, Haywood continued to work for six days. He then sought medical treatment from Dr. Donald Cook, an orthopedic surgeon, nineteen days after the accident. Haywood claimed that he had over $6,000 in special damages and lost wages of $32,000, and he sought total compensation of $257,000. The jury awarded him $2,000, and Haywood moved for an additur or alternatively for new trial on damages. Like the present case, a photograph of Haywood’s car revealed minor damage.
¶ 13. This Court refused to alter the jury award in Haywood, noting serious problems with both Haywood’s and Dr. Cook’s testimony. Specifically, Haywood provided discovery answers in which he denied having back problems before the accident. At trial, he admitted under cross-examination that he had experienced back trouble in the past. Dr. Cook’s testimony was impeached when the following was revealed: he had not performed surgery since 1988, approximately seven years before Haywood’s accident; he had no admitting privileges in any hospital; he had sent attorney solicitation letters statewide advertising his availability to evaluate patients for lawsuits; his primary medical practice involved evaluating patients with Social Security claims; he performs evaluations for insurance companies; and he required Haywood to sign a form which authorized payment of Dr. Cook’s bill from the proceeds of the lawsuit.
¶ 14. There are significant differences in Haywood which distinguish it from the case sub judice. Hubbard was hospitalized immediately after the accident and remained hospitalized for five days. Hubbard did not lie about his pre-existing hip condition. Hubbard only stayed under a doctor’s care for six weeks after his release from the hospital and he fully recovered from the neck injury. Dr. Warner’s opinion that Hubbard had sustained a *550 muscle spasm in his neck was supported by the x-ray he ordered, objective evidence that Hubbard sustained a neck injury. Unlike Dr. Cook in Haywood, Dr. Warner derived only ten to twenty percent of his practice from patients involved in litigation. While Dr. Warner had quit performing surgery two years before trial, he did so in anticipation of retirement, not to become a professional expert witness. Again, unlike Dr. Cook, Dr. Warner retained admitting privileges in area hospitals. Dr. Warner did not actively solicit patients from attorneys. While Dr. Warner required Hubbard to assign his rights to a portion of any lawsuit recovery to cover his bill, Hubbard clearly agreed to pay the bill if litigation did not yield the full amount owed. Unlike Haywood, who sought a windfall of $252,000 for an injury for which he was not even hospitalized, Hubbard asked the jury for “fair compensation” in his closing arguments. While the record shows Dr. Warner did not recall having previously testified in court, when in fact he had so testified about a year earlier, the record does not reflect that Dr. Warner deliberately intended to mislead the jury. The record shows that Dr. Warner remembered testifying in depositions but not in court. His lack of recollection does not rise to the level that would justify the jury’s verdict for less than Hubbard’s medical expenses.
¶ 15. We look to other case law for guidance in determining what constitutes “proper evidence” that would enable a defendant to rebut the prima facie reasonableness and necessity of medical bills. In James v. Jackson, 514 So.2d 1224 (Miss.1987), the defendant had elicited testimony from a medical expert which questioned the plaintiffs injury. The expert reviewed an x-ray of the plaintiffs neck and noted that it did not show a straightening of the usual curve of the neck which, the expert opined, the x-ray would have shown if the plaintiff had sustained a muscle spasm as she claimed. Despite the conflicting proof of plaintiffs injury, the court ruled that the trial court did not abuse its discretion in ordering an additur of $2,000 where the verdict was for $1,000 in a case where the plaintiff claimed over $4,000 in special damages.
¶ 16. The plaintiff in Green v. Grant, 641 So.2d 1203 (Miss.1994) claimed medical expenses of $2,118.25 and lost wages of $1,330.58. The jury awarded her $2,000. The court affirmed the trial court’s denial of the plaintiffs motion for an additur, noting that testimony from a medical doctor refuted the prima facie reasonableness and necessity of the plaintiffs medical expenses.
¶ 17. “Each case involving the issue of additur must ‘necessarily be decided on its own facts.’ ” Id. at 1208 (quoting Leach v. Leach, 597 So.2d 1295, 1297 (Miss.1992)). Miss.Code Ann. § 41-9-119 (Rev.1993) dictates that Hubbard’s medical bills are prima facie evidence of their reasonableness; thus, for the verdict to stand Canterbury must have submitted proper evidence to rebut the bills. We find that Canterbury did not properly rebut Hubbard’s medical expenses as did the defendant in Green. Instead, she relied solely upon speculation and argument of counsel to call into question the reasonableness of Hubbard’s medical bills. While notations in the medical records may cast doubt on the extent of Hubbard’s pain and suffering, pointing to entries in the hospital records that question Hubbard’s claim of pain does not invalidate the necessity of the medical treatment. Further, Canterbury offered no evidence to rebut the necessity and reasonableness of Dr. Warner’s treatment, and the record does not support her claim that she impeached him. We are of the opinion that Canterbury’s attorney inflamed the jury with arguments for which he had no evidentiary support. The verdict was the result of bias, passion, and *551 prejudice and against the overwhelming weight of the evidence, and the trial court abused its discretion by overruling Hubbard’s motion for additur or in the alternative for new trial on damages. We find that while the extent of Hubbard’s pain and suffering may have been successfully rebutted, his medical bills were not; therefore, we order additur of $1,592.53, which will fully compensate Hubbard for his medical expenses. If Canterbury does not accept the additur, we remand for new trial on the issue of damages only.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF SIMPSON COUNTY AFFIRMED ON CONDITION OF ACCEPTANCE OF ADDITUR OF $1,592.53 BY CANTERBURY. COSTS OF APPEAL ARE ASSESSED TO APPEL-LEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.