906 So.2d 108 (2004)
Terry DAUGHTERY, Appellant,
v.
Valerie D. CONLEY, Appellee.
No. 2003-CA-02092-COA.
Court of Appeals of Mississippi.
December 7, 2004.
*109 Daniel M. Czamanske, Jr., Clarksdale, attorney for appellant.
Dawn Davis Carson, Robert L. Moore, attorneys for appellee.
Before KING, C.J., CHANDLER, and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. Terry Daughtery, a passenger, brought negligence action against Valerie D. Conley, the driver of another automobile, to recover for damages from appendicitis allegedly caused by the collision. At the close of all evidence, the Circuit Court of DeSoto County granted Conley's motion for directed verdict. Daughtery appealed. We find no error and affirm.

STATEMENT OF FACTS
¶ 2. On August 20, 1998, Terry Daughtery was sitting as a passenger in the front seat of an automobile which was stopped at a traffic light. Valerie Conley fell asleep at the wheel of the vehicle she was driving and collided with the rear of the vehicle in which Daughtery was a passenger. Daughtery was wearing a lap seatbelt at the time of the collision. Daughtery stated at the scene that he did not feel like he was injured, and he informed paramedics that he was all right. Daughtery worked the rest of the day after the collision and did not experience any medical problems for the next five days.
¶ 3. However, on August 24, 1998, Daughtery went to the doctor complaining of severe abdominal pains. Daughtery was examined and x-rayed, and then sent home. With his abdominal pain worsening, Daughtery went to the emergency room the next day. He was admitted for an appendicitis, and underwent an appendectomy approximately forty-eight hours later.
¶ 4. Daughtery filed a complaint in June 1999 alleging that Conley's negligence caused his appendicitis. During the jury trial, Conley made a motion for a directed verdict at the close of Daughtery's proof on the basis that the medical testimony offered by Daughtery failed to prove that Daughtery's appendicitis was caused by the automobile collision. The motion was denied. Conley renewed her motion at the close of all evidence, and the trial court granted the directed verdict in Conley's favor. Aggrieved, Daughtery appeals asserting that the trial court erred in granting Conley's motion for a directed verdict due to the sufficiency of medical expert testimony regarding causation.

ISSUE AND ANALYSIS

I. Whether the trial court erred in granting Conley's motion for a directed *110 verdict due to the sufficiency of medical expert testimony regarding causation.
¶ 5. Daughtery argues that the trial court should not have granted Conley's motion for a directed verdict because expert medical testimony had established that it was more probable than not that the automobile collision caused Daughtery's appendicitis, and the evidence was sufficient to submit the issue of negligence to the jury.
¶ 6. This Court conducts a de novo review of motions for directed verdict. Houston v. York, 755 So.2d 495, 499(¶ 12) (Miss.Ct.App.1999).
When deciding whether the granting of a motion for directed verdict was proper by the lower court, this Court considers the evidence in the light most favorable to the non-moving party and gives that party the benefit of all favorable inferences that may be reasonably drawn from the evidence presented at trial. If the favorable inferences have been reasonably drawn in favor of the non-moving party so as to create a question of fact from which reasonable minds could differ, then the motion for directed verdict should not be granted and the matter should be given to the jury.
Id. (citations omitted).
¶ 7. Conley argues that the directed verdict was appropriate because Daughtery failed to present sufficient proof that the collision caused his appendicitis. Conley maintains that according to Pittman v. Hodges, 462 So.2d 330, 334 (Miss.1984), although absolute medical certainty is not required, medical testimony must be provided in terms of probability, not possibility.
¶ 8. Conversely, Daughtery maintains that neither the United States Supreme Court nor the Mississippi Supreme Court requires the use of magic words in a medical witness's testimony regarding causation. The United States Supreme Court has stated that the issue of causation "does not turn on the use of a particular form of words by the physicians in giving their testimony." Sentilles v. Inter-Caribbean Shipping Corp., 361 U.S. 107, 109, 80 S.Ct. 173, 4 L.Ed.2d 142 (1959). The Mississippi Supreme Court, however, has stated that testimony in terms of medical probability, rather than possibility, is required by Mississippi law. Sutherlands Lumber & Home Center, Inc. v. Whittington, 878 So.2d 80, 83(¶ 10) (Miss.Ct.App.2003) (citing Pittman, 462 So.2d at 333).
¶ 9. The central argument on appeal is whether Mississippi law requires expert medical testimony to be expressed in terms of medical probability or possibility. The issue, however, is not whether a specific word must be spoken during testimony. The Supreme Court's distinction in Pittman between the use of probability and possibility was employed in reference to the expert medical witness's ability to convey to the trial court the requisite level of reliability of the expert medical opinion. Neither Pittman nor Whittington should be misread simply as an exercise in form over substance. The mere use, or non-use, of the word probability in expert medical opinion testimony is never a substitute for determining the reliability of an expert medical opinion. The semantic illustration was not offered as a script for expert medical testimony, rather it reflects the substantive requirement that the expert medical opinion testimony must be reliable.
¶ 10. Mississippi Rule of Evidence 702 was amended in May 2003 in response to Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) in order to address the reliability of expert opinion testimony. The Mississippi *111 Supreme Court has subsequently held that the "Daubert rule is not limited to scientific expert testimonyrather, the rule applies equally to all types of expert testimony." Mississippi Transp. Comm'n v. McLemore, 863 So.2d 31, 38(¶ 16) (Miss.2003). There is a two-prong test for evaluating expert testimony: (1) the court must determine whether the evidence is relevant, and (2) the court must determine whether the proffered testimony is reliable. Id. Daubert also provided an exhaustive list of factors for determining the reliability of expert testimony, including "whether the theory or technique enjoys general acceptance within a relevant scientific community." Mississippi Transp. Comm'n, 863 So.2d at 37(¶ 13) (citing Daubert, 509 U.S. at 592-94, 113 S.Ct. 2786). Additionally, M.R.E. 702 gives the trial judge "`discretionary authority, reviewable for abuse, to determine reliability in light of the particular facts and circumstances of the particular case.'" Mississippi Transp. Comm'n, 863 So.2d at 39(¶ 24) (quoting Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 158, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).
¶ 11. At trial, Daughtery and Conley each presented expert medical testimony from two medical doctors. Conley's witnesses testified that the causal connection between this type of collision and an appendicitis was anecdotal and impossible respectively. Daughtery offered testimony from Steven Hayne, M.D. and Enrique Gomez, M.D. in support of his argument that there is a causal connection between the rear-end automobile collision and Daughtery's appendicitis. Dr. Gomez was the surgeon who performed the appendectomy. On direct examination, Dr. Gomez was asked the following:
Q . . . . did you form an opinion, then, to a reasonable degree of medical probability as to whether or not in this particular case the seat belt and the  the trauma from the seat belt in the motor vehicle accident then was the cause of Mr. Daughtery's appendicitis?
A . . . . given the events of this case and the timing of the onset of symptoms, it is quite conceivable that the patient's appendicitis was as a result of the vehicular accident.
¶ 12. The following exchange occurred during the cross-examination of Dr. Gomez:
Q. When [Daughtery's counsel] called you for the first time, you told them, I've never seen that [causal connection] or I've never heard of that and I've never read of that, true?
A. I doubted it. I did  I did doubt it.
Q. And it wasn't until they sent you literature that you read that you came to the conclusion that it is conceivable?
A. Conceivable, yes.
Q. And that's the best word, isn't it?
A. Yes, conceivable.
¶ 13. Dr. Gomez was then questioned about his physical examination of Daughtery:
Q. In addition to running tests on him, you examined his abdomen because he was complaining of abdominal pain?
A. Correct.
Q . . . . you didn't find any sign of injury, did you?
A. No.
Q . . . . in addition to that visual examination of the outside of his body, you did a CT examination of the inside of his body?
A. Correct.

*112 Q. The CT scan didn't find any abnormalities in the appendix, did it?
A. Correct.
¶ 14. Dr. Haynes likewise stated his medical opinion on direct examination:
Q . . . . to a reasonable degree of medical certainty, did the automobile accident four days before he was originally taken to the emergency room in your opinion cause or contribute to cause the appendicitis that he ultimately suffered . . . ?
A. It would be consistent with a product from the motor vehicle crash. It would in part meet Fowler's criteria reported in the Journal of the American Medical Association of 1938 in which he lists three criteria. The criteria would include that there was no previous abdominal pain and that  in the right lower quadrant; two, that there was a force directed upon the abdominal wall, which would be consistent in this case. And the third would not meet Fowler's criteria, that is, that the onset of pain would have occurred within [eight] hours to [forty-eight] hours. However, there's other literature, case presentations and the like that would indicate that the onset could be delayed at least five days. And that's in the British surgical literature as well as the American surgical literature. So Fowler's criteria would be met in part with the exception of the third criteria.
Q. And based upon the records you reviewed, the slide you reviewed, the literature you reviewed, your experience and education, to a reasonable degree of medical certainty didin your opinion did the accident. . . cause or contribute to cause the appendicitis . . .?
A. It would be consistent with that.
Q. In the absence, then  assuming no evidence comes forward of those other [causes] of acute appendicitis, is there any other medically reasonable explanation in your opinion as to the cause of his appendicitis?
A. I do not know of any other explanation. I cannot exclude all potential causes of acute appendicitis. All I'm saying is consistent with a product of a motor vehicle crash.
¶ 15. On cross-examination, Dr. Haynes was questioned about his expert medical opinion and the materials on which it was based:
Q. Now, in this literature that has been provided to you [by plaintiff's counsel], can you tell me which one you think is most authoritative on the subject that acute appendicitis results more likely than not from an automobile accident?
A. I think each one of these. There are different levels of certainty described in the articles, but cumulatively I think that they indicate to my reading that there is an association in absence of other [causes].
¶ 16. On redirect, Dr. Hayne explained what items he relied upon in forming his expert medical opinion:
A. I think the most important thing would be looking at the standard in literature, and that was established almost [seventy] years ago in the Journal of the American Medical Association. It met two of the three criteria. The third criteria I think needs to be modified.
¶ 17. The trial court has "`considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" Mississippi Transp. Comm'n, 863 So.2d *113 at 37(¶ 13) (quoting Kumho Tire, 526 U.S. at 152, 119 S.Ct. 1167). In the case below, the trial court allowed both parties to fully present their expert testimony. Both parties had every opportunity to fully present their arguments and evidence, and every witness was subjected to cross-examination. The evidence presented clearly reflects the existence of a theory within the medical community regarding a causal connection between automobile collisions and appendicitis. Dr. Gomez testified that the causal connection is conceivable, and Dr. Haynes testified that the appendicitis is consistent with a product of a motor vehicle crash and that his reading of the medical literature indicates that there is an association between the two events in the absence of other causes. The record also clearly reflects that the facts of this case do not even satisfy all three of the "Fowler criteria" which Daughtery presents in support of this causal theory. Even in drawing all favorable inferences from the evidence in Daughtery's behalf, the final analysis is clear. The trial court appropriately determined that Daughtery failed to present evidence sufficient to demonstrate that the theory of a causal connection between rear-impact vehicle collisions and appendicitis enjoys general acceptance within the medical community. It would have been inappropriate to charge the jury with ratifying a theory that is not generally accepted in the medical community, and which the medical community itself has not yet adopted. Therefore, we affirm the trial court's order granting a directed verdict in Conley's favor.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS AND BARNES, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.