United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 4, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 04-10946

DEBRA WALKER; ET AL

        Defendants

DEBRA WALKER; JEANETTE WASHINGTON; HAZEL WILLIAMS; ZELMA
LANG; RENITA BROWN; LILLIE THOMPSON;

        Plaintiffs - Appellees

TRACEY SMITH

        Intervenor Plaintiff - Appellee

    v.

CITY OF MESQUITE, TX; ET AL

        Defendants

    v.

HIGHLANDS OF MCKAMY IV AND V COMMUNITY IMPROVEMENT
ASSOCIATION; GINGER LEE; PRESTON HIGHLANDS HOMEOWNERS'
ASSOCIATION INC; DAVID BEER;

        Appellants

---

HIGHLANDS OF MCKAMY IV AND V COMMUNITY IMPROVEMENT
ASSOCIATION; GINGER LEE; PRESTON HIGHLANDS HOMEOWNERS'
ASSOCIATION INC; DAVID BEER;

        Plaintiffs - Appellants

    v.

HOUSING AUTHORITY OF THE CITY OF DALLAS

        Defendant - Appellee

1

Before HIGGINBOTHAM, SMITH, and BENAVIDES, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

This case concerns a lawsuit filed by Appellants, residents of a neighborhood in Dallas, Texas, against the Dallas Housing Authority ("DHA"), Appellee, to enjoin it from constructing public housing in their community. The residents allege that DHA's decision to build on this particular property ("the Hillcrest Site") violates their Fourteenth Amendment equal protection rights. The district court found no constitutional violation and permitted the construction to go forward. For the reasons that follow, we affirm the district court's ruling.

## I. Background

The long saga of this case began in 1985 with a lawsuit filed on behalf of African-American plaintiffs against DHA.[1] It alleged, *inter alia*, that DHA engaged in systematic racial segregation through its construction and maintenance of public housing in Dallas. In order to settle the claim that it consciously failed to locate public housing in predominantly white neighborhoods, DHA agreed to a 1987 consent decree

---

[1]For a detailed history of this matter, see our opinions in *Walker v. City of Mesquite*, 169 F.3d 973 (5th Cir. 1999), and *Walker v. HUD*, 912 F.2d 819 (5th Cir. 1990).

integrating Dallas public housing. In 1994, after repeated breaches of the consent decree, DHA and the plaintiffs in that case negotiated a remedial order which was then imposed by the district court.

The remedial order required, *inter alia*, that DHA construct public housing in "predominantly white areas" to remedy past segregation. In compliance with the remedial order, DHA purchased two such sites in Dallas, the McCallum Site and the Hillcrest Site. In 1996, homeowners in these areas sued to enjoin construction, arguing that the remedial order violated their equal protection rights by requiring public housing in "predominantly white areas." The district court denied the homeowners' request for an injunction.

The homeowners appealed that decision to this Court in 1999 and we reversed. *See Walker*, 169 F.3d 973. Specifically, we held that a race-conscious remedy was not required to ameliorate segregative policies at DHA and thus the district court's order was not narrowly tailored. *See id.* at 985. Construction on the Hillcrest and McCallum Sites was enjoined pending the district court's revision of the remedial order to comply with this Court's opinion. *See id.* at 988. Significantly, the opinion did "not preclude the construction or acquisition of additional public housing if sites [were] selected by means of nonracial criteria." *Id.*

3

In 2001, the district court modified the vacated remedial order to remove all references to the race of residents in areas in which public housing could be constructed. The only racial classifications it contained were those prohibiting DHA from discriminating against African-Americans in its housing policies. The order still required DHA to construct some public housing. DHA subsequently filed a motion to allow it to build on the Hillcrest Site. Appellants again objected on equal protection grounds and, in December 2003, the district court held a hearing on the motion. On May 18, 2004, the district court entered its findings of fact and conclusions of law, granting DHA's motion for approval of Hillcrest as a public housing site. It dismissed with prejudice Appellants' suit the following month. This appeal followed.

## II. Discussion

We review the district court's findings of fact for clear error and its conclusions of law *de novo*.[2] *Ayers v. Thompson*,

---

[2]Appellants ask us to apply a less deferential standard of review because of the constitutional nature of this case. Contrary to Appellants' assertions, the proper standard of review for factual findings in equal protection cases like this is clear error. *See Women's Med. Ctr. of Northwest Houston v. Bell*, 248 F.3d 411, 419 (5th Cir. 2001); *Theriot v. Parish of Jefferson*, 185 F.3d 477, 484 (5th Cir. 1999). Appellants' contention that, because the district court largely adopted the proposed findings of facts submitted by Appellees, we should not use the clear error standard is similarly unpersuasive. Even if proposed findings of fact are adopted by the trial court, absent extraordinary circumstances, this Court continues to review them for clear error. *See Anderson v. Bessemer City*, 470 U.S. 564,

4

358 F.3d 356, 368 (5th Cir. 2004). "A factual finding is not clearly erroneous as long as it is plausible in the light of the record read as a whole." *United States v. Cluck*, 143 F.3d 174, 180 (5th Cir. 1998).

Appellants claim that DHA's decision to construct public housing on the Hillcrest Site violates their equal protection rights under the Fourteenth Amendment. For cases like this, where the challenged governmental action is facially race-neutral, "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). *Accord Washington v. Davis*, 426 U.S. 229, 240 (1976) (stating that "the invidious quality of a law claimed to be racially discriminatory must ultimately be traced to a racially discriminatory purpose"). "Once racial discrimination is shown to have been a 'substantial' or 'motivating' factor," the burden shifts to those supporting the governmental action to show that the same course would have been pursued absent the discrimination. *Hunter v. Underwood*, 471 U.S. 222, 228 (1985).

The district court found, *inter alia*: "DHA's present intention to build public housing on the Hillcrest Site is not based on any racial consideration"; "An intent to discriminate on

---

572 (1985); *Marine Shale Processors Inc. v. EPA*, 81 F.3d 1371, 1386 (5th Cir. 1996).

the basis of race is not a substantial or motivating factor in DHA's present intention to build public housing on the Hillcrest Site, and, in fact, was not a factor at all"; "The Hillcrest Site meets HUD's and the court's requirements and is the best site available in the entire city"; and "DHA would have decided to build public housing on the Hillcrest Site absent the 'predominantly white area' requirement." Additionally, it concluded that DHA's decision is not "traceable" to the prior impermissible race-conscious selection criteria. In short, the district court found that DHA did not consider race when deciding to build on the Hillcrest Site in 2001, and, regardless of any past improper considerations, DHA still would have built on the site because it is such an ideal location for public housing. Appellants fail to show that the district court's conclusions are clearly erroneous. Although the parties contest specific factual matters, the record, taken as a whole, does show that the district court's findings of fact are plausible. Thus, we find no constitutional violation.

Appellants also argue that DHA's actions relating to the Hillcrest Site run afoul of the Fourteenth Amendment because its site selection can be traced to its prior unconstitutional activity. They contend that, regardless of DHA's current intentions, the decision to build public housing on the Hillcrest Site is unconstitutional as a matter of law. They base their

argument on the Supreme Court's ruling in *United States v. Fordice*.  505 U.S. 717 (1992).

The *Fordice* Court found that Mississippi had not "met its affirmative duty to dismantle its prior dual university system." *Id.* at 728.  Rather, the state university system continued to maintain separate institutions, each largely restricted to a single race, through "practices traceable to its prior *de jure* dual system."  *Id.*  Such government-fostered, educational segregation runs afoul of *Brown v. Board of Education*, 347 U.S. 483 (1954), and its progeny.  *Id.* at 727-28.  Specifically, the Supreme Court concluded that a state like Mississippi, which had maintained a *de jure* dual higher education system, "does not discharge its constitutional obligations until it eradicates policies and practices traceable to its prior *de jure* dual system that continue to foster segregation."  *Id.* at 728.  "If the State perpetuates policies and practices traceable to its prior system that continue to have segregative effects . . . and such policies are without sound educational justification and can be practicably eliminated, the State has not satisfied its burden of proving that it has dismantled its prior system."  *Id.* at 731. Appellants seek to analogize to *Fordice* by characterizing DHA's retention of and subsequent decision to develop Hillcrest as a "racially neutral" policy "animated by a discriminatory purpose." *Id.* at 731-32.

7

It is clear to us that DHA's current plan to build on the Hillcrest Site cannot be reasonably characterized as a continuation of an unconstitutional policy or practice such as that described in *Fordice*.

For the foregoing reasons, we AFFIRM the district court's decision.