United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 16, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

))))))))))))))))))))))))))))

No. 06-61103
Summary Calendar

))))))))))))))))))))))))))))

TODD SPAULDING

        Plaintiff–Appellant

   v.

UNITED STATES OF AMERICA

        Defendant–Appellee

---

Appeal from the United States District Court
for the Southern District of Mississippi
No. 1:05-CV-0221

---

Before SMITH, DeMOSS, and PRADO, Circuit Judges.

PER CURIAM:[*]

    Before us is an appeal by Plaintiff Todd Spaulding
("Spaulding") of a district court's judgment following a two-day
bench trial that resulted in a verdict and damages for Spaulding
for personal injuries he received in a motor vehicle accident.
On appeal, Spaulding contends that the district court erred by
failing to take into account evidence regarding the severity of

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

his injury, failing to award damages for future surgery, and making too small an award of compensatory damages.  In accordance with the deference afforded the district court in this situation, we AFFIRM.

## I. BACKGROUND FACTS

On April 8, 2003, Spaulding, a reservist in the U.S. Air Force, was driving east on Highway 26 in Stone County, Mississippi.  He was on his way to Mobile, Alabama, to be married and was accompanied by his fiancee Sheila, who is now his wife ("Sheila Spaulding"), and her two children.  When Spaulding slowed down to allow some dogs to pass in front of his vehicle, he was hit from behind by John Nichols ("Nichols"), an employee of the United States Postal Service.  Nichols had attempted to stop, but the road was too slick due to rain.  Spaulding's vehicle sustained damage to the bumper, frame, and right rear taillight.  After speaking with police at the scene, Spaulding proceeded to Alabama and was married.  At trial, Spaulding testified that he felt tense all over immediately after the accident, but did not seek medical assistance at that time.

Approximately one week after the incident, Spaulding went to the emergency room of the Stone County Hospital with neck and low back pain.  The x-rays taken of his cervical and lumbar spine appeared to be normal, and Dr. Deepinder Burn ("Dr. Burn") discharged Spaulding after giving him a prescription for pain

medication.  On April 19, 2003, Spaulding completed a pre-deployment health assessment in preparation for his upcoming deployment to Guam.  During the assessment, he described his health as "good."  Spaulding then spent two months in Guam as an electronic avionic mechanic, returning in June 2003.  At his post-deployment health assessment, Spaulding described his overall health as "fair."

Several months later, on October 28, 2003, Spaulding went to see Dr. Burn at the Stone County Family Medical Clinic with complaints of back pain.  Dr. Burn ordered an MRI of Spaulding's lumbar spine and referred Spaulding to Dr. Charles Winters ("Dr. Winters"), an orthopedic surgeon.  Spaulding did not go to see Dr. Winters until October 8, 2004, almost one year later, at which time Dr. Winters took a medical history and reviewed the MRI scan from the previous year.  Dr. Winters diagnosed Spaulding as having degenerative and protruding discs in his back.  He advised Spaulding to limit the activities which put stress on his back, such as bending, lifting, and jogging, and prescribed him an anti-inflammatory.

Spaulding next saw Dr. Winters on May 25, 2005, again complaining of back pain.  Dr. Winters changed Spaulding's prescription and continued to advise Spaulding to refrain from bending, lifting, and jogging.  Dr. Winters stated Spaulding could still ride a bike and perform certain weight-lifting exercises, as long as they did not put a strain on his back.

3

In the time between the accident in April 2003 and the trial of this matter, Spaulding was called to active duty as a reservist on four occasions (including the time he spent in Guam, discussed above). Spaulding also changed jobs twice during that time period. He initially worked as a mechanic for Kennedy Marine. In November 2004, Spaulding became employed by Keesler Air Force Base. He underwent a pre-employment physical and was cleared to work as a special purpose vehicle mechanic. In June 2005, Spaulding obtained a position with Vinell Corporation, a position that he continued to hold at the time of trial and for which he was again cleared to work as a special purpose vehicle mechanic. For his job with Vinell, Spaulding is stationed in Qatar and routinely works sixty hours per week. Apart from his doctors' visits, Spaulding has missed only one half-day's work due to back pain.

## II. PROCEDURAL HISTORY

Spaulding filed suit against Defendant-Appellee United States of America ("United States") on May 12, 2005, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671, et seq. (2000). Spaulding sought damages for the injuries he received as a result of the accident in April 2003. Following a period of discovery, the district court held a bench trial on October 3-4, 2006. At trial, the district court heard testimony from Spaulding and Sheila Spaulding. Dr. Winters's deposition

4

was also entered into evidence.  The district court issued written findings of fact and conclusions of law on October 5, 2006, in which it found that Nichols had been negligent and that the United States was liable.  The district court assessed damages of $2958 in medical expenses and $20,000 for "past, present, and future mental and physical pain and suffering, and the loss of enjoyment of life."

Believing the evidence entitled him to more damages than were awarded, Spaulding filed a motion to amend or correct the judgment, which the district court denied without comment. Spaulding now appeals to this court.  As a final judgment has been entered, we have jurisdiction pursuant to 28 U.S.C. § 1291.

### III. STANDARD OF REVIEW

Our standard of review for findings and conclusions following a bench trial is well established--findings of fact are reviewed for clear error, while legal issues are reviewed de novo.  Water Craft Mgmt., L.L.C. v. Mercury Marine, 457 F.3d 484, 488 (5th Cir. 2006); Energy Mgmt. Corp. v. City of Shreveport, 397 F.3d 297, 302 (5th Cir. 2005).  "A factual finding is not clearly erroneous as long as it is plausible in the light of the record read as a whole."  Walker v. City of Mesquite, 402 F.3d 532, 535 (5th Cir. 2005) (internal quotation marks and citation omitted); see also Moorhead v. Mitsubishi Aircraft Int'l, Inc., 828 F.2d 278, 283 (5th Cir. 1987) (describing clear error).

5

Reversal for clear error is warranted only if the court has a definite and firm conviction that a mistake has been committed. Canal Barge Co. v. Torco Oil Co., 220 F.3d 370, 375 (5th Cir. 2000).

Similarly, a motion to amend the judgment is generally reviewed for an abuse of discretion, while any legal conclusions are considered de novo. Elementis Chromium L.P. v. Coastal States Petroleum Co., 450 F.3d 607, 610 (5th Cir. 2006).

## IV. DISCUSSION

Spaulding brought suit pursuant to the FTCA, which waives the United States' sovereign immunity for personal injuries "caused by the negligent or wrongful act or omission of any employee" of the United States acting in the course and scope of his duties. 28 U.S.C. § 1346(b); Metro. Life Ins. Co. v. Atkins, 225 F.3d 510, 512 (5th Cir. 2000). Under the FTCA, the United States is liable in damages to the same extent a private person would be liable for the same negligent act or omission under the law of the state in which the act or omission occurred. 28 U.S.C. § 1346(b); Skipper v. United States, 1 F.3d 349, 352 (5th Cir. 1993). Here, the United States does not dispute that Nichols was acting in the course and scope of his duties as an employee of the United States Postal Service when he rear-ended Spaulding. As the accident occurred in Mississippi, we will apply Mississippi's laws regarding negligence in this case.

A.  Whether the district court erred in limiting damages to the
    exacerbation of a pre-existing condition

Spaulding first contends that the district court erred when it limited Spaulding's compensatory damages to those for exacerbation of a pre-existing condition.  Spaulding argues that the district court used the wrong standard of proof to analyze Dr. Winters's opinion regarding the cause of Spaulding's injuries, and that the district court should have compensated him for the damages he incurred as a result of his protruding discs. The United States counters that Dr. Winters's testimony concerning the timing and cause of the protruding discs was less than straightforward.

As much of Spaulding's argument hinges on Dr. Winters's testimony regarding the cause and extent of the problems with Spaulding's back, we consider how Mississippi courts treat such expert testimony.  Under Mississippi law, expert testimony regarding medical causation is not probative unless it is in terms of probabilities, not possibilities.  Pittman v. Hodges, 462 So. 2d 330, 333-34 (Miss. 1984).  This is not to say that a specific word must be used by an expert before the court may rely on his opinion.  See Daughtery v. Conley, 906 So. 2d 108, 110 (Miss. Ct. App. 2004) (noting that courts should not undertake an exercise of form over substance).  Further, an expert witness need not testify with absolute certainty.  Pittman, 462 So. 2d at 335.  Instead, the underlying concern of the court is whether

7

or not the expert's testimony is sufficiently reliable. Daughtery, 906 So. 2d at 110. In other words, the use of "probability" and "possibility" is a semantic illustration that reflects the requirement that an expert's testimony be reliable. Id.

In this case, Dr. Winters's testimony was presented in the form of his deposition. In support of his argument on appeal, Spaulding relies heavily on Dr. Winters's affirmative answer when asked if he believed, based on reasonable medical probability, that the motor vehicle accident was the cause of Spaulding's "condition." Dr. Winters, however, did not elaborate as to how he reached that conclusion, and the rest of Dr. Winters's testimony creates some confusion as to his exact opinion regarding the cause of Spaulding's injuries.

First, Dr. Winters admitted that at least part of Spaulding's back problems predated the accident. Dr. Winters's diagnosis of Spaulding was that he had a "combination of problems" with his back that included a degenerative problem caused by wear and tear and protruding discs that appeared as if Spaulding had injured them. Dr. Winters also referred to Spaulding as having a "combination of degenerative changes," meaning "arthritis-type changes and post-traumatic changes." According to Dr. Winters, the degenerative problems with Spaulding's back arose prior to the accident in April 2003. Given that the degenerative problems with Spaulding's back

8

predated the accident, Dr. Winters's conclusion that Spaulding's "condition" was caused by the accident is not entirely accurate.

Second, Dr. Winters's testimony was undermined by his admission that he was unaware of several facts that might have affected his opinion. For example, Dr. Winters testified that Spaulding's failure to seek any medical treatment for his back for long periods of time was inconsistent with Spaulding's complaints. Dr. Winters further stated that it was inconsistent that Spaulding did not miss any work due to his back problems and had in fact been cleared to do physical labor.

Finally, Dr. Winters's testimony could reasonably be interpreted to mean that Spaulding's protruding discs were the exacerbation of a pre-existing condition. Dr. Winters testified that "[m]y diagnosis was that [Spaulding] had degenerative changes which were aggravated by his motor vehicle accident based on the history that I was given." This testimony accords with the district court's ruling that Spaulding should be compensated for the exacerbation of a pre-existing condition. Dr. Winters further stated that "my opinion is that [Spaulding] had a pre-existing condition that was aggravated by the motor vehicle accident and the protrusions of the disk likely occurred at the time of the accident." Again, this supports the conclusion that the protruding discs were an aggravation or exacerbation of Spaulding's pre-existing condition. Consequently, the district court's award of damages for the exacerbation of a pre-existing

condition is entirely reasonable and appropriate.

In sum, the district court did not err in limiting Spaulding's damages to those for exacerbation of a pre-existing condition, as Dr. Winters's testimony was unclear on the extent of the damages caused by the motor vehicle accident. The district court's conclusion is plausible in light of all the evidence, and, thus, does not amount to clear error. See Walker, 402 F.3d at 535 (describing clear error). Therefore, we will not reverse the district court on this point.

B.   Whether the district court erred in failing to award the cost of future surgery

Spaulding next contends that the district court erred by not awarding him damages for the cost of future surgery for his back. The United States argues that Dr. Winters never testified that the amounts for the surgery were reasonable and that Dr. Winters never linked Spaulding's need for surgery to the motor vehicle accident.

Spaulding again relies on the testimony of Dr. Winters to support his claim that he will eventually need surgery to correct his back problems. In his deposition, Dr. Winters testified that Spaulding would likely need surgery in the future to alleviate some of the problems in his back. Dr. Winters described the procedures as a discectomy, laminectomy, and lumbar fusion, for a total cost of $14,000. The district court did not award damages for this amount and noted that Dr. Winters failed to testify that

10

such amounts were reasonable or that surgery was a reasonable medical probability.

Setting aside the issue of the reasonableness of the amount, we note that Mississippi law requires evidence that the damages sought were causally connected to the accident. See Bryan Bros. Packing Co. v. Grubbs, 168 So. 2d 289, 293 (Miss. 1964); see also Owen v. Owen, 928 So. 2d 156, 168 (Miss. 2006) (regarding damages for repairs and noting there must be evidence that repairs were "necessary as a result of the wrongful act") (emphasis added). Dr. Winters never testified that Spaulding would need surgery as a result of the motor vehicle accident. Instead, each time Dr. Winters mentioned surgery, it was in connection with Spaulding's degenerative and arthritic condition, which, as noted above, predated the accident.[1] If the surgery was required because of the pre-existing degenerative condition, it is not compensable as damages in the instant case because the requisite causal connection to the accident would be lacking. Therefore, given the uncertainty of whether the accident caused the back problem requiring surgery, the district court did not err in refusing to award damages for future surgery.

C. Whether the award of $20,000 for pain and suffering was fair

---

[1] Dr. Winters testified that "[a]s [Spaulding's] arthritis got worse, he would develop more crowding of his nerves. He would have to have what's called a laminectomy . . . ." Dr. Winters also stated that "[w]ithin a reasonable medical probability his arthritis is going to get worse to the point where he's going to have to have something done."

11

<u>and adequate</u>

Finally, Spaulding contends that the district court's award of $20,000 in compensatory damages for "[p]ast, present, and future mental and physical pain and suffering, and the loss of enjoyment of life" was clearly inadequate. The United States argues that the amount is fair and reasonable, given Spaulding's pre-existing condition, his infrequent doctor visits, and his ability to work. Under Mississippi law, an award of damages cannot be determined by any fixed rule, but rests largely within the discretion and judgment of the factfinder. <u>See</u> <u>Kinnard v. Martin</u>, 223 So. 2d 300, 302-03 (Miss. 1969).

In its findings and conclusions in this case, the district court noted that its award of $20,000 was fair and reasonable when compared to similar cases involving back pain caused by rear-end collisions. <u>See</u> <u>Burge v. Spiers</u>, 856 So. 2d 577, 580 (Miss. Ct. App. 2003) (awarding medical expenses, but no pain and suffering damages); <u>Clark v. Deakle</u>, 800 So. 2d 1227, 1231 (Miss. Ct. App. 2001) (awarding medical expenses and approximately $511 in pain and suffering); <u>Hubbard v. Canterbury</u>, 805 So. 2d 545, 550-51 (Miss. Ct. App. 2000) (awarding medical expenses, but no pain and suffering damages). Spaulding argues these cases are distinguishable on the facts and that his situation is similar to other cases in which much larger awards were given. <u>See</u> <u>Williams v. Chevron U.S.A., Inc.</u>, 875 F.2d 501, 506-07 (5th Cir. 1989) (awarding $200,000); <u>Holmes v. J. Ray McDermott & Co.</u>, 734 F.2d

12

1110, 1119 (5th Cir. 1984), overruled on other grounds, Guevara v. Maritime Overseas Corp., 59 F.3d 1546 (5th Cir. 1995) (awarding $180,000); Whitten v. Land, 188 So. 2d 246, 252 (Miss. 1966) (awarding $70,000); McNeil v. Bourn, 721 So. 2d 663, 670-71 (Miss. Ct. App. 1998) (awarding $121,000, which included over $22,000 in medical expenses).

Not to be outdone, we, too, have scoured the caselaw and found several cases worth mentioning here. See City of Jackson v. Lipsey, 834 So. 2d 687, 694 (Miss. 2003) (awarding $25,000 for injuries following a car accident when plaintiff was laid up for two weeks, unable to work or move); Wal-Mart Stores, Inc. v. Johnson, 807 So. 2d 382, 392 (Miss. 2001) (awarding $30,000 and $37,000 to two plaintiffs in a car accident where neither broke any bones, but both testified as to continued pain and limited mobility); Kern v. Gulf Coast Nursing Home of Moss Point, Inc., 502 So. 2d 1198, 1201 (Miss. 1987) (awarding $20,000 for a fall requiring hip replacement); Sharp v. Odom, 743 So. 2d 425, 432 (Miss. Ct. App. 2000) (awarding $16,000 for pain and suffering to a plaintiff who was shot in the chest).

Rather than demonstrate that the district court was right or wrong in its award of damages, what these cases show is that damages are necessarily awarded on a case-by-case basis and dependent upon the specific facts of the case. See Kinnard, 223 So. 2d at 303 ("Each suit for personal injury must be decided by the facts shown in that particular case."). As the trier of fact

in this matter, the district court was best situated to determine what amount of damages was warranted.

Here, the evidence shows that Spaulding has pain in his back, is limited in some, but not all, areas of exercise, has trouble sleeping, and has some emotional distress as a result. Should Spaulding eventually have back surgery, which may or may not be related to the accident, he would suffer a 7% impairment to his whole body. We cannot say that the district court's award of $20,000 for Spaulding's pain and suffering was clearly insufficient. Therefore, we will not disturb the district court's judgment.

## V. CONCLUSION

For the foregoing reasons, we conclude that the district court did not err in its judgment. Therefore, we AFFIRM.

AFFIRMED.